Virgil C. Gillan, Appellee, v. Chicago North Shore and Milwaukee Railway Company, Appellant.

Gen. No. 46,168.

468

Opinion filed March 8, 1954. Released for publication March 24, 1954.

JAMES J. MAGNER, of Chicago, for appellant; FRANCIS X. BUSCH, E. N. MULDOON, and E. MARVIN BUEHLER, all of Chicago, of counsel.

PHILIP H. CORBOY, of Chicago, for appellee.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment for $50,000 entered in plaintiff's action for personal injuries resulting from a collision between the automobile in which he was riding as a guest and an electric train of defendant at the intersection of Washington avenue and defendant's tracks in Highwood, Illinois a few minutes before 6 a. m., February 7, 1952. The sole contention on appeal is that the trial court should have directed a verdict for defendant or sustained its motion for judgment notwithstanding the verdict because there was no evidence that plaintiff was in the exercise of due care for his own safety and the evidence affirmatively showed that he was guilty of contributory negligence.

Plaintiff, a soldier stationed at Fort Sheridan, and three other soldiers—Russell, Benavides and Allen—from the same fort, were returning after spending the

night at the Bella Vista, a bar and restaurant in High-
wood, and the Skokie Gardens, a tavern at the inter-
section of United States Highway 41 and the Cook-
Lake County Road, about 5 or 6 miles to the south and
west of the Bella Vista. They had gone to the Gardens
from the Bella Vista in a Chevrolet automobile owned
and driven by Russell. In the party was a girl friend
of Allen. They left the Gardens about 4:30 or 4:45
a. m. Benavides was driving at the request of Russell,
who sat on the front seat between the driver and plain-
tiff. Allen and the girl were in the back seat. There
is no evidence that any in the party were intoxicated.
Russell and plaintiff fell asleep almost immediately and
remained asleep until the collision in which plaintiff
was injured. After taking the girl to her home in High-
wood, Benavides drove to Washington avenue and
turned east toward Fort Sheridan, beyond the railroad
tracks.

Washington avenue runs east and west and crosses
the tracks of the Chicago & North Western Railway
and the defendant. These tracks run slightly diagon-
ally, northwest and southeast. From west to east there
are three North Western tracks, an open space of about
69 feet, and three tracks of defendant. The crossing is
protected by three sets of manually-operated gates
which extend across the street when down—one west
of the North Western tracks, one immediately east of
these tracks, and the third east of defendant's tracks.
The two westerly tracks of defendant are main-line
tracks for south and northbound trains. The most east-
erly track is a side track. Between the main tracks and
the side track and immediately north of the north curb
of Washington avenue is the watchman's tower. From
the North Western tracks east there is nothing to ob-
struct the view of defendant's tracks north and south
for a considerable distance.

Benavides and Allen were witnesses for plaintiff. The former testified that when the automobile reached Green Bay road, the first north and south street west of the tracks, the three sets of gates were down, a bell was ringing and the red lights on the gates were flashing; he stopped; a train which he believed was on the North Western tracks passed to the south, the gates went up, he started to cross the tracks at about 10 to 15 miles an hour, when about 65 feet from defendant's northbound track he glanced to his right but didn't see the northbound electric train which ran into him. Allen corroborates the testimony of Benavides. He said that when they were over the defendant's tracks he glanced to the right and saw the lights of a train coming "on the same track we were on"; that the east gates started to lower. Neither Benavides nor Allen heard a whistle or bell after starting across the tracks. Defendant's version, as told by its employees, is that the gates were down; a single car passed to the south, meeting the northbound train about two to four hundred feet south of the crossing; the northbound train had an electric headlight 500-watt bulb turned on bright; it was going 30 to 35 miles an hour; when about 800 feet from the crossing the motorman of the train saw that the gates were down and the red lights were on; that an automobile was parked about 10 feet east of the southbound track; that when he passed the southbound car he saw that the automobile had started across the tracks, he applied his brakes and gave a warning whistle; the automobile suddenly stopped, with its right-rear wheel on the east rail of the track; he put his brakes into emergency; the train struck the automobile.

██ Defendant's motions for a directed verdict and for judgment notwithstanding the verdict present a question of law as to whether, when all the evidence is considered, together with all reasonable inferences

471

from it in its aspect most favorable to plaintiff, there is a total failure or lack of evidence to prove any necessary element of plaintiff's case. *Heideman v. Kelsey,* 414 Ill. 453, 457. Where, as here, there is no wilful or wanton injury, the plaintiff cannot recover "unless it appears he was in the exercise of ordinary care for his safety, and in such case it is the duty of the court to direct a verdict for the defendant if there is no evidence tending to show affirmatively that the plaintiff was exercising due care or to raise a reasonable inference of such care." *Illinois Central R. Co. v. Oswald,* 338 Ill. 270.

The law fixes the same standard of duty for a passenger as for a driver of an automobile—the exercise of reasonable care for his own safety, but the conduct which reasonable care requires of a passenger will not ordinarily, if in any case, be the same as that required of a driver because their circumstances are different. *Clarke v. Connecticut Co.,* 83 Conn. 219. In *Dee v. City of Peru,* 343 Ill. 36, the passenger's duty was defined as follows:

"It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger."

This rule has never been construed to require action by a passenger when the driver exercising due care is aware of approaching vehicles or other danger. *Hagen v. Bailus,* 283 Ill. App. 249, in which this court quoted with approval from *Hermann v. Rhode Island Co.,* 36 R. I. 447, as follows:

"It cannot be said as a matter of law that such guest or passenger is guilty of negligence because he has

472

done nothing. In many such cases the highest degree of caution may consist of inaction. In situations of great and sudden peril meddlesome interference with those having control, either by physical act or by disturbing suggestions and needless warnings may be exceedingly disastrous in its result."

Except in rare instances, as when danger hidden from the driver is or should be obvious to a passenger, the duty of the latter to act begins only when the driver ceases to exercise due care for the safety of the occupants of the automobile. And when there is an equal opportunity to discover impending danger, the action, if any, required of a passenger is in inverse ratio to the care exercised by the driver. If the driver is guilty of negligence as a matter of law, a passenger who does nothing is guilty as a matter of law of failing to exercise due care. *Dee v. City of Peru, supra; Elliott v. Elgin, J. & E. Ry. Co.*, 325 Ill. App. 161; *Henert v. Chicago & N. W. Ry. Co.*, 332 Ill. App. 194. It is error to instruct the jury that although the driver did not exercise ordinary care for the safety of those in the automobile, yet the plaintiff, a passenger, might have been in the exercise of such care herself, without the slightest evidence that she did anything at all. *Opp v. Pryor*, 294 Ill. 538. When the negligence of the driver is a question of fact for the jury, a passenger who does nothing is not guilty as a matter of law of want of ordinary care. *Langston v. Chicago & N. W. Ry. Co.*, 330 Ill. App. 260; *Berg v. New York Cent. R. Co.*, 323 Ill. App. 221; *Smith v. Courtney*, 281 Ill. App. 530; *Rhoden v. Peoria Creamery Co.*, 278 Ill. App. 452; *St. Clair Nat. Bank of Belleville v. Monaghan*, 256 Ill. App. 471. When a driver exercises due care there is a fair inference that the passenger who does nothing is in the exercise of due care. *Opp v. Pryor, supra; Smith v. Courtney, supra; St. Clair Nat. Bank of Belleville v. Monaghan, supra.*

When a passenger is not required to act, it is immaterial whether he was asleep or awake before or at the time of the collision. *Thompson v. Riemer,* 283 Ill. App. 371, was an action brought for the death of a sleeping passenger. *Smith v. Courtney, supra,* was an action for injuries to the driver, a passenger who was awake and three sleeping passengers. Judgments for the plaintiffs were sustained. In each case there was a head-on collision on an open road, the motor vehicle of the defendant swerving across the dividing line on the pavement into the path of the oncoming automobile, too close to permit the driver of the latter to avoid the impact. The question of the due care of the sleeping passengers was submitted to the jury as a question of fact. It is true, as pointed out by defendant in its reply brief, that in each case the reviewing court held the case before it was distinguishable from the cases where it is the duty of the passenger in a vehicle to be on the lookout for danger at places where it is known that danger is likely to exist. Our Supreme Court has not made that distinction. In *Opp v. Pryor, supra,* the plaintiff was for all practical purposes sound asleep when approaching the railroad crossing. She deliberately chose not to look and not to listen and, like a sleeping passenger, entrusted her safety to the driver. She was injured in a collision of the automobile in which she was riding as a guest and a train of cars at an unguarded crossing of the railroad and a city street, about 9:30 in the evening. As in the instant case, plaintiff sat in the front seat on the right-hand side, from which direction the train came. She testified that she did not remember anything about the collision; that she left the driving and management of the automobile entirely to the driver and did not do anything in connection with it. As said by the Supreme Court, ". . . her only reliance to prove her ordinary care was the testi-

474

mony of Ethel Shambaugh (the driver) and Belle Wood (a passenger) as to what they could see." The driver testified that she looked and did not see anything. The Supreme Court held that it could not say as a matter of law that there was no evidence of ordinary care of the plaintiff. The case was reversed because of the giving of the instruction hereinbefore referred to.

The evidence in this case most favorable to plaintiff, which must be taken as true on defendant's motions and on this appeal, is that when the automobile reached the Green Bay road, just west of the North Western tracks, the three gates were down, a bell was ringing and the red lights on the gates were flashing; the driver waited until a train passed to the south and the gates went up; he then started to cross the tracks at 10 to 15 miles an hour; when about 65 feet from defendant's northbound track he looked to the south but did not see the oncoming train; neither he nor Allen heard a bell or whistle when the automobile was on defendant's tracks. Allen looked to the south and saw the oncoming train on the track they were on and saw the east gates starting to lower.

Of the many statements by the Illinois courts of review of the care required of a traveler on a highway in approaching and crossing railroad tracks, defendant selects the statement in *Moudy v. New York, C. & St. L. R. Co.*, 385 Ill. 446. In that case plaintiff, the driver of an automobile, was injured at an unprotected railroad crossing. He charged in his complaint that he was unable to see the approaching train because of high weeds and shrubs in the railroad right of way, or to hear the train because of failure to blow a whistle or ring a bell. The court said (p. 452):

"The rule has long been settled in this State, and is generally recognized, that railroad crossings are dan-

475

gerous places, and that one crossing the same must approach the track with the same amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a crossing it is generally condemned as negligence. The law requires the traveler, under such circumstances, to make diligent use of his senses of sight and hearing, to retain proper control of his vehicle, and to exercise care commensurate with the danger to be anticipated." (Citations.)

 It has also been long established in this State that what is required of one approaching a railroad track depends upon the circumstances in each case, and the courts cannot say as a matter of law that one must conduct himself in a particular manner in each case and under all conditions. Neither can they say as a matter of law that a person is negligent in failing to look and listen, if misled without his fault or where the surroundings may excuse such failure. *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386, 391; *Chicago B. & Q. R. Co. v. Pollock,* 195 Ill. 156, 163; *Humbert v. Lowden,* 385 Ill. 437; *Langston v. Chicago & N. W. Ry. Co.,* 398 Ill. 248; *Applegate v. Chicago & N. W. Ry. Co.,* 334 Ill. App. 141 (appeal denied 336 Ill. App. xiv [table]); *Smith v. Illinois Cent. R. Co.,* 343 Ill. App. 593, 604.

The case of *Humbert v. Lowden,* 385 Ill. 437, was decided on the same day *Moudy v. New York, C. & St. L. R. Co., supra,* was decided. In the *Humbert* case plaintiff's decedent and Owen Whitted, the driver of decedent's automobile, died of injuries received when the automobile was struck by a fast passenger train running at its usual speed of 70 miles per hour at the intersection of State street in Geneseo, Illinois and defendant's tracks, about 3 o'clock in the morning. The tracks run in a northwesterly and southeasterly direc-

tion; State street runs north and south; the train was running in a northwesterly direction on the westbound track; on the east side of State street and approximately 33 feet south of the center of the westbound track is a police station—a one-story building; gates and a bell operated manually by a flagman had been installed and maintained at the crossing for a number of years; at the time of the collision a red lantern was hanging on each gate; when lowered the gates extended across the traffic lanes, with the lanterns in front of approaching traffic; deceased and the driver entered the automobile about two blocks south of the railroad crossing and proceeded north to the crossing. There was a conflict in the evidence as to the distance from the crossing persons passing to the north of the police station could see a westbound train. There was also a conflict of evidence as to whether the gates were down. The flagman was on duty. The Appellate Court reversed the judgment for plaintiff, holding that even if it be assumed that the crossing gates were not lowered, the decedent as a matter of law was not in the exercise of ordinary care for his own safety in going upon the crossing without observing the approaching train. The Supreme Court said (pages 442-443):

"It is true that the record indicates that if deceased had looked in the direction from which the train was approaching, after the automobile had reached a point where his vision was not obstructed by the police station, he could and would have seen the approaching train. Under the particular facts in this case, this is not conclusive, as a matter of law, that he was guilty of contributory negligence. . . .

"Here, for the protection of the public, appellees had erected and maintained crossing gates. If the gates were not lowered this amounted to an invitation to travelers on the highway. It was an assurance, to them,

that they could cross over the railroad tracks in safety. In *Chicago and Alton Railroad Co. v. Pearson,* 184 Ill. 386, it was said: 'It is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty.' This rule was quoted with approval in *Chicago and Eastern Illinois Railroad Co. v. Schmitz,* 211 Ill. 446. It was there said that it is a question for the jury to determine whether, in view of all the surroundings, the injured party was guilty of negligence, in failing to look and listen, or whether he is relieved, by the circumstances, from the duty to look and listen."

The Supreme Court reversed the judgment of the Appellate Court, holding that under the facts of the case it was a question of fact for the jury whether deceased was excused from the duty of looking.

There is no conflict between the decision in *Moudy v. New York, C. & St. L. R. Co., supra,* relied on by defendant, and the decision in *Humbert v. Lowden, supra,* when they are read in the light of the facts in each case and the questions presented to the court. In the *Moudy* case plaintiff was approaching an unprotected crossing where he claimed the view of approaching trains was obstructed by high weeds and shrubs on defendant's right of way. In the *Humbert* case the deceased was approaching a railroad crossing protected by a bell, gates and lights operated by a watchman on duty at the time of the accident and plaintiff claimed that the gates were up, indicating that the tracks could be crossed in safety. It is obvious that the exercise of due care would require different conduct of the approaching travelers. *Humbert v. Lowden,* was fully discussed and followed by the Appellate and Supreme Courts in *Langston v. Chicago & N. W. Ry. Co.,* 330 Ill. App. 260; 398 Ill. 248. In that case signal lights maintained by the railroad were not working and the driver

478

of the automobile ran into a moving freight train cross-
ing the highway on a foggy night. The question of
exercise of due care by the driver and three occupants
of the automobile was held to be a question of fact for
the jury.

 The *Humbert* and *Langston* cases were fol-
lowed in *Applegate v. Chicago & N. W. Ry. Co.*, 334 Ill.
App. 141. In that case plaintiff's decedents were killed
when a northbound passenger train traveling 90 miles
an hour struck the automobile in which they were rid-
ing west on 27th street in Zion, Ill. The railroad main-
tained flasher signals at the crossing. The driver of
decedents' car stopped east of the tracks to wait for
the passing of a southbound freight train. The signals
were working. There was evidence that as the caboose
of the freight train passed 27th street the flasher lights
ceased functioning; the driver started forward without
waiting for the freight train to get far enough from the
crossing to give a clear view of the northbound track,
the second from the east; as the front of the automobile
reached that track it was struck by the passenger train.
There was no evidence that the passengers did any-
thing. In holding that the exercise of due care by the
decedents was a question of fact for the jury, the court
referred to *Grubb v. Illinois Terminal Co.*, 366 Ill. 330,
337, and cases from other jurisdictions, holding that
the failure of crossing signals does not relieve the
traveler of his duty to look for approaching trains,
and said (pages 156–7):

"The case at bar, however, is clearly distinguishable
from the foregoing decisions. The light signals herein
were operating during the time the freight train was
passing over the intersection, and decedents had reason
to rely upon them, not by virtue of their mere presence,
but from the fact that they were obviously in working
order. Had these signals not been operating initially

the decedents might reasonably have contemplated the possibility of the mechanical failure of the apparatus. Under the circumstances involved herein, it could reasonably be inferred that the decedents were lulled into a sense of security when they saw the signals functioning. Hence, when the lights ceased flashing, decedents may have legitimately concluded that it was safe to cross. (*Langston v. Chicago & N. W. Ry. Co., supra.*)"

So in the instant case, the driver saw the gates were down. When a train passed to the south he saw the gates raised. He could reasonably infer that the gates were in good working order and that the watchman, looking from his vantage point in the tower, saw no oncoming trains near enough to require keeping the crossing closed to traffic. The raised gates, then, were an invitation to him to pass over the tracks and assurance that he could do so in safety. Whether he exercised due care in relying on the appearance of safety created by defendant and crossing the tracks without looking carefully to the south for approaching trains, was a question of fact for the jury. So, too, was the due care of the silent and inactive plaintiff, who had no duty to say or do anything so long as the driver was in the exercise of due care for the safety of himself and the occupants of the automobile. The trial court did not err in submitting the question of plaintiff's due care to the jury and in refusing to enter judgment for defendant notwithstanding the verdict.

The judgment is affirmed.

*Affirmed.*

Burke and Friend, JJ., concur.