CLAUD STREET, Admr. of the Estate of Larry Lee Byers, Deceased, *et al.*, Plaintiffs-Appellees, *v.* KEITH FINNEY *et al.*, Defendants-Appellants.

(No. 11452;

Fourth District—January 31, 1973.

Giffin, Winning, Lindner, Newkirk & Cohen, and Potter & Costello, both of Springfield, (Alfred F. Newkirk and Michael J. Costello, of counsel,) for appellants.

Thomson, Thomson & Mirza, of Bloomington, (Jerome Mirza, of counsel,) for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Judgments for plaintiffs were entered upon jury verdicts in actions for wrongful death and funeral expenses. Defendants appeal.

Decedent was a passenger riding in the left rear seat of the automobile driven by defendant, Finney. The latter was driving south upon an oiled country road in the nighttime. Defendant, Brown, was driving west upon a similar road and the cars collided at an uncontrolled intersection. The evidence conflicts as to the speeds of the respective vehicles and as to the extent of the obstruction of the view of the drivers by reason of growing soybeans. The evidence shows that Brown's car laid down 87 feet of skid marks prior to the impact. Defendant, Finney, testified that he did not see the approaching Brown car until he was in the center of the intersection. Since the judgments must be reversed upon points of law, we do not detail the evidence further.

The court refused Finney's tendered instruction, I.P.I. Civil, No. 14.01, and gave instead plaintiff's tendered instruction:

"When I use the expression 'wilful and wanton conduct' I mean a course of action which shows an utter indifference to or con-

scious disregard for the safety of others, *such as failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.*" (Emphasis supplied.)

The first portion of the instruction is I.P.I. Civil, No. 14.01, omitting the language of intentional conduct, but the emphasized portion adds language from the opinion in *Schneiderman v. Interstate Tr. Lines,* 394 Ill. 569, 69 N.E.2d 293.

The defendant, Finney, argues that the instruction is confusing and improper in that it undertakes to define wanton conduct in terms of ordinary negligence. Plaintiff argues that the added portion is a proper modification of the pattern instruction and that the language of the pattern instruction is an incorrect statement of the law which permits unfair argument by defense counsel. He also urges that the Supreme Court has refused to overrule the *Schneiderman* language, citing *Myers v. Krajefska,* 8 Ill.2d 322, 134 N.E.2d 277; *Klatt v. Commonwealth Edison,* 33 Ill.2d 481, 211 N.E.2d 720; *Hocking v. Rehnquist,* 44 Ill.2d 196, 254 N.E.2d 515; and *Hering v. Hilton,* 12 Ill.2d 559, 147 N.E.2d 311. None of the cases cited by defendant concerned the instruction of a jury as to the definition of wanton conduct.

■■ Supreme Court Rule 239, adopted effectively September 1, 1961, as Supreme Court Rule 25—1, provides that:

> "[T]he I.P.I. instruction shall be used, unless the court determines that it does not accurately state the law."

*Schneiderman, Myers,* and *Hering* antedate the rule.

There is scholarly basis supporting the view urged by Finney. In Prosser, *Law of Torts* (4th Ed. 1971), p. 185, it is said:

> "The usual meaning assigned to 'wilful,' 'wanton' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable. * * *.
>
> The result is that 'wilful,' 'wanton' or 'reckless' conduct tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent * * *."

More specifically discussing the problem at hand, it is said at page 186:

> "A few particular jurisdictions have added no little to the confusion which surrounds 'wilful and wanton negligence' by defining it, under the automobile guest acts or in contributory negligence cases, as a mere failure to exercise ordinary care after discovery of ordinary danger—or in other words, ordinary negligence in the case of a known ordinary risk. Such negligence may consist of an unintentional failure to act promptly or even an honest mistake in judgment. This definition has rightly been condemned as unsound in principle, * * *."

The instruction, as framed, equates or makes synonymous the words "recklessness or carelessness". While some dictionaries do not establish a clear cut difference between "reckless" and "careless", it appears that in discussing the quality of wanton conduct, they should not be taken as synonymous. In Black's Law Dictionary, "wanton negligence" is defined as:

> "The negligent act of one who, without having the intent to injure, is conscious from his knowledge of the existing circumstances and conditions that his conduct will naturally and probably result in injury."

In similar context, Ill. Rev. Stat. 1969, ch. 38, par. 4—6, equates "reckless" and "wanton" and states that a person acts recklessly:

> "[W]hen he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow * * *; and that such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

Within the context of such definitions, the instruction placing "recklessness or carelessness" upon the same level of quality necessarily creates confusion or uncertainty.

In *Myers v. Krajefska*, 8 Ill.2d 322, 134 N.E.2d 277, the court discussed the guest statute and its foundation upon wilful and wanton conduct, saying:

> "The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved * * *. *It is generally considered in that area of fault between ordinary negligence and actual malice.*" (Emphasis supplied.)

It is apparent that the essential description of the conduct concerned in the opinion is in almost the precise language of the pattern instruction.

■■ The potential for confusion and misunderstanding is particularly apparent, where, as here, the jury is called upon to consider a count in negligence as well as a count in wilful and wanton negligence with the necessary accompanying definitions of ordinary care and of the duty of the parties. The instruction tendered and given was a substantial deviation from the standards and purposes of the pattern instruction and cannot be approved.

An issue framed upon the pleading in the court's instruction was that of decedent's exercise of ordinary care for his own safety prior to and at the time of the collision. During the jury summation, Brown's counsel referred to decedent's position in the car, and the latter's opportunity to observe the approach of a car to the intersection. The trial court sustained plaintiff's objection that "the passenger has no duty to observe under those circumstances". Thereafter, plaintiff's counsel argued:

> "Did Larry Byers contribute to cause this collision to occur? Did Keith Finney contribute to cause this collision to occur? Did James Brown contribute to cause the collision to occur? Only two of these people could, because Larry Byers was sitting in the car, not disturbing the driver and *the passenger is not to look for vehicles or do anything else.* He has to sit there and not disturb the driver. We don't approve of back seat driving in the State of Illinois." (Emphasis supplied.)

Brown's counsel objected to such statement of the law. The court reserved ruling and did not thereafter rule upon the objection, or otherwise instruct the jury upon such matter. The question is preserved in the post-trial motions.

Plaintiff cites *Smith v. Bishop,* 32 Ill.2d 380, 205 N.E.2d 461; *Hatcher v. New York Cent. R.R. Co.,* 17 Ill.2d 587, 162 N.E.2d 362, and *Smith v. Polukey,* 22 Ill.App.2d 238, 160 N.E.2d 508, as authorities supporting his position. These cases, however, do not hold that the passenger had no duty to look, and the opinions in *Bishop* and *Polukey* show that the passenger did look and did see the endangering vehicle. These opinions were, in fact, discussing the passenger's duty to warn. In *Polukey,* the court stated that whether the failure of the guest to warn is negligence depends upon the circumstances. In *Bishop* and *Hatcher,* it was stated that the passenger has no duty to warn unless he sees obvious danger which the driver might not see.

■■ In *Hatcher,* it is said that the duty of a passenger in an automobile is to use such care and caution as a person situated in like circumstances

would exercise. In *Pedrick v. Peoria & E. R.R. Co.*, 63 Ill.App.2d 117, 211 N.E.2d 134 (Affirmed, 37 Ill.2d 494, 229 N.E.2d 504), it was said:

> "A passenger riding in an automobile must exercise due care for his own safety, and if he has an opportunity of learning of approaching danger, and has the opportunity to avoid said danger, he must warn the driver of such danger. Such passenger, merely because someone else is driving the car, has no right to omit prudent efforts on his part to avoid danger."

In *Siebens v. Konicek*, 108 Ill.App.2d 300, 247 N.E.2d 453, it is said:

> "It is the duty of a passenger in a vehicle where he has the opportunity to learn of and avoid a danger, to warn the driver of a vehicle, of the approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger. *Zank v. Chicago, R. I. & P. R. R. Co.*, supra, 483, 161 N.E.2d 848; *Gillan v. Chicago North Shore & M. Ry. Co.*, 1 Ill.App.2d 466, 117 N.E.2d 833 (1954)."

■■ In *Pizano v. Trejo*, 2 Ill.App.3d 944, 274 N.E.2d 861, the court reversed the finding of the trial court that the guest was not guilty of contributory negligence as a matter of law, saying "at precisely what point the duty of a passenger arises to change from passive reliance upon the driver to active protest is largely a factual question to be decided by the jury upon the evidence of facts and circumstances".

■■ By reason of plaintiff's argument purporting to state the law and the failure of the court to rule upon Brown's objection, the jury considered the evidence in the light of an erroneous statement of law concerning decedent's duty to exercise ordinary care for his own safety.

The error is emphasized under the evidence to be considered by the jury that Finney did not see Brown until the former's vehicle was in the middle of the intersection, and by the evidence that decedent and those in the Finney car had been drinking beer for some span of time. For such reason, the judgment entered against Brown must be reversed.

Issues not necessarily reviewed upon this appeal will possibly arise upon a new trial. The trial court refused to permit counsel to ask questions of the jurors during *voir dire* examination. In a memorandum the court stated that Supreme Court Rule 234 can:

> "[E]asily be interpreted as granting complete discretion to the trial court to conduct the *voir dire*.",

and that he did not believe that counsel had an absolute right to ask questions during the *voir dire*.

■■ In *People v. Lobb*, 17 Ill.2d 287, 161 N.E.2d 325, the court speaks of the rule as a reasonable limitation upon *voir dire* examination by the

parties, and states that the rule recognizes and preserves the privilege of a reasonable opportunity to supplement the examination conducted by the court. The opinion expressly notes that the rule permitted both the court and counsel to question jurors concerning their competency and qualifications. On *voir dire* an attorney has the right to make such reasonable pertinent inquiries as will permit an intelligent exercise of a right to challenge. (*Schneider v. Kirk*, 83 Ill.App.2d 170, 226 N.E.2d 655; *Watson v. Fischbach*, 6 Ill.App.3d 166, 284 N.E.2d 720.) In *Lobb* it is stated that a failure to permit additional pertinent inquiries by the respective parties to enable such parties to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis of challenge for cause, or which would enable them to exercise their right of peremptory challenge intelligently, may constitute reversible error.

The judgments below are reversed and the cause is remanded for a new trial.

Reversed and remanded.

SMITH and SIMKINS, JJ., concur.