THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RODGA M. TURNER (Impleaded), Defendant-Appellant.

(No. 60135;

First District (3rd Division)—March 20, 1975.

William A. Cain, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Jerome Charles Randolph, and Bruce H. Weitzman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Rodga Turner, was indicted for murder and armed robbery (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1 and 18—2). The jury found defendant not guilty of armed robbery and guilty of voluntary manslaughter (par. 9—2). The court entered judgment upon the findings of the jury and sentenced defendant to 4 to 12 years in the penitentiary. Defendant appeals from this judgment.

On appeal defendant contends as grounds for reversal that the trial court erred in (1) limiting defendant to 10 peremptory challenges; (2)

restricting *voir dire* examination of jurors; (3) instructing as to reasonable doubt; (4) denying his motion to strike testimony of a witness for failure to understand the nature of an oath; and (5) giving an instruction as to circumstantial evidence.

Adam Strong testified for the State that on July 28, 1972, he and defendant were walking west on 64th Street in Chicago when defendant suggested they rob somebody; that defendant stopped Clyde James [deceased], argued, then stabbed James; and that defendant took money from James' pocket and ran away. Barbara Brown testified that on the night in question she saw two men fighting and a third person standing a couple of feet away; that as she started walking toward them she saw one man fall and the other two run away. She did not see anyone go through the fallen man's pockets, and although she was unable to identify the two who ran away, she identified James as the person who had fallen.

The theory of defendant's defense was that he stabbed James in self-defense. He testified that after Strong accidentally bumped into him, James threw a bottle at them, pulled a knife and started toward defendant. According to defendant, he picked up the knife after he had wrested it from James' hand; James struck him in the shoulder, causing the knife to make an upward motion which caused him to "stick the man in the arm." Defendant stated that he dropped the knife and "trotted" away, and when he turned around he saw James getting up from the ground.

Officer Sykes testified that on the day of the arrest defendant said the "old man" was drinking wine and threw the bottle at them. Prior to defendant's testimony it was stipulated that a toxicologist would testify that there was no alcohol in the blood of the deceased, and that the pathologist who conducted the autopsy would testify that James had four stab wounds in his chest, one in his left arm, and one in the middle of his back. Louis James testified that the decedent was his uncle and was 84 years of age.

## I.

■■ Defendant's first contention on appeal is that he was improperly limited to 10 peremptory challenges in a murder trial. We disagree. The same argument was raised, considered and explicitly rejected in the recent case of *People v. Watkins* (1974), 17 Ill.App.3d 574, 308 N.E.2d 180. There the court held that since the defendant was tried subsequent to the United States Supreme Court decisions of *Furman v. Georgia* (1972), 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, and *Moore v. Illinois* (1972), 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562, which struck down the death penalty as cruel and unusual punishment, the defendant's case falls within the provision of section 115—4(e) of the Code of Criminal

Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(e)), which allows only 10 peremptory challenges where the punishment may be imprisonment in the penitentiary.

Defendant refers to the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A(6)) which provides that in any case where a defendant is convicted of murder the State shall seek imposition of the death penalty where the individual was killed in the course of a robbery. He impliedly suggests that our legislature intended to retain capital punishment contrary to the decisions in *Furman* and *Moore* and that he was therefore entitled to 20 peremptory challenges because this was a capital case. We need not reach this issue. Section 5—8—1A(6), even if demonstrative of the alleged legislative intent to retain the death penalty—which we do not here concede—did not become effective until November 8, 1973, almost 4 months after defendant's trial.

## II.

Defendant next contends that the trial court erred in limiting interrogation by defendant on *voir dire* to submitting in writing questions to be asked of the prospective jurors by the court. The court conducted the entire examination of jurors. Defense counsel submitted only one set of questions which were propounded to the jurors by the court.

■■ Supreme Court Rule 234 (Ill. Rev. Stat. 1973, ch. 110A, par. 234) states: "The judge shall initiate the *voir dire* examination of jurors .* * *. * * * The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination, * * *." In *People v. Carruthers* (1974), 18 Ill.App.3d 255, 309 N.E.2d 659, we held that direct questioning of prospective jurors by the parties or their attorneys during *voir dire* examination is not to be totally prohibited. (*People v. Lobb* (1959), 17 Ill.2d 287, 161 N.E.2d 325; *Street v. Finney* (1973), 9 Ill. App.3d 638, 292 N.E.2d 553.) However, we also held in *Carruthers* that no prejudicial error occurs in the selection of jurors by such procedure where there is no evidence that thereby defendant's attorney [was] "prevented from discovering any fact or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror in the case." 18 Ill.App.3d 255, 261.

■■ In the instant case the court advised the prosecution and the defense that it would conduct *voir dire* examination of prospective jurors, and added: "To the extent that if there is some area that the Court has not covered, if I so make a determination that [then] I will let counsel go into this on their own." In the record we find no objection made by defendant as to the conduct of the *voir dire* examination. No additional written questions were submitted to the trial court, nor were any oral

objections made challenging any prospective jurors on the grounds of bias or lack of essential qualifications for service. As stated in People v. Lobb, 17 Ill.2d 287, 300:

> "However, a failure to permit pertinent inquiries to enable a party to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis of challenge for cause, or which would enable him to exercise his right of peremptory challenge intelligently, *may* constitute reversible error." (Emphasis supplied.)

Here, as in Lobb and Carruthers, defense counsel's failure to submit supplemental questions to the trial court or to request the court to allow direct questions in an area purportedly not covered adequately by the court serves only to emphasize that the examination conducted by the court was "thorough enough to reveal any facts necessary to show grounds of challenge for cause or an intelligent exercise of the right to challenge peremptorily." (People v. Lobb, 17 Ill.2d 287, 302-303.) It is not mandatory, as defendant suggests, that the record establish the jury as fair and impartial. Rather, it is incumbent upon the objecting party to show that the prohibition against direct questioning imposed by the court prevented him from discovering any fact or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror, or otherwise precluded him from an intelligent exercise of the right to challenge for cause or peremptorily. While direct questioning of prospective jurors by the parties or their attorneys is not to be wholly prohibited under Supreme Court Rule 234, after a careful examination of the record we find the restriction was not so prejudicial as to constitute reversible error.

### III.

Defendant's next contention is that the trial court committed reversible error in defining "reasonable doubt" and that this error was compounded by the prosecution's reference to such definition in closing argument. At the commencement of the trial the court made a preliminary statement to the prospective jurors which included the following:

> "The phrase beyond a reasonable doubt will run throughout this trial. The only definition you will receive as to what that phrase means is the one which I will now give you, and that is that a reasonable doubt is a doubt based on reason. There will be no other definition which you will receive from the parties, the attorneys in the case, or from the Court, as to that phrase."

Defense counsel's objection to the definition was overruled. Later, during final argument to the jury, the prosecutor remarked: "All we are expect-

ing you to find is beyond a reasonable doubt. You remember Judge Strayhorn instructed you * * *." Counsel's objection to any instruction on reasonable doubt was overruled. After the prosecutor resumed saying "It is no doubt," no further reference was made to the statement of the judge.

In *People v. Cagle* (1969), 41 Ill.2d 528, 536, 244 N.E.2d 200, upon which defendant strongly relies, the court stated: "This court has repeatedly held that the legal concept of 'reasonable doubt' needs no definition, and that where an involved instruction on that concept is given it may be deemed prejudicial error." There the trial court instructed the jury with a complicated definition of reasonable doubt that contained such phrases as "to justify an acquittal," "cause a reasonable and prudent man to hesitate and pause," and "abiding conviction of the truth of the charge." In a subsequent per curiam opinion filed in *People v. Perry* (1972), 52 Ill.2d 156, 287 N.E.2d 129, the Supreme Court reversed the appellate court and held that although the instruction given, similar to that in *Cagle*, ought not to have been given, the fact that it was given does not alone require a new trial. In *Perry*, the given instruction provided, among other things, that "[a] doubt to justify an acquittal must be reasonable and it must arise from a candid and impartial investigation of all the evidence in the case." In *People v. Drumheller* (1973), 15 Ill. App.3d 418, 304 N.E.2d 455, the court held that although the instruction defining reasonable doubt should never have been given, and since the facts were not close as to the guilt of the defendant, the instruction did not constitute reversible error.

In the instant case, the oral instruction did not contain the phrase "to justify acquittal." In fact, the trial court did no more than rephrase the term reasonable doubt by stating that it was a doubt based on reason. No further or other attempt was made by the trial court to define the term; nor can it be said that the prosecutor's singular reference to the judge's earlier comment served to clarify that definition or unduly emphasize it. Defendant does not contend on appeal that he was not proved guilty beyond a reasonable doubt, and upon review of the facts we find that they were not close as to the guilt of defendant. We hold that under the circumstances the instruction and the prosecutor's reference thereto, albeit improper, did not constitute reversible error. *People v. Drumheller, supra,* and *People v. Perry, supra.*

## IV.

■■ The defendant further contends that the court erred in refusing to strike the testimony of Adam Strong because, as defendant stated in his brief filed with this court: "There was not a scintilla of morality in

his testimony of the nature of an oath. There was no evidence of binding conscience in his testimony." Upon cross-examination by the defense the witness testified that he knew the meaning of his oath to tell the truth, that if he lied he would be guilty of perjury and could go to jail, and that he desired to stay out of jail. When counsel inquired if anything else would happen to him in addition to jail for perjury, the prosecution's objection was sustained. In *People v. Schladweiler* (1925), 315 Ill. 553, 146 N.E. 525, the defendant's contention, similar to that urged in the instant case, was that the examination of the witnesses did not disclose that they understood the meaning or obligation of an oath. However, the court there held at page 555:

> "Such is not, however, the rule in this State. A test as to religious opinion or belief is no longer required in determining the competency of a witness. The requirement is not one of age or religious belief but of intelligence and understanding."

The only necessary subjects of inquiry as to the competency of a witness to testify are whether the witness possesses sufficient intelligence and understanding to know the difference between truth and falsehood, and whether the witness has signified that he is bound in conscience to act truthfully. See *In re Petition for Removal of Rice* (1962), 35 Ill.App.2d 79, 181 N.E.2d 742; *Hronek v. People* (1890), 134 Ill. 139, 24 N.E. 861; and *People v. Schladweiler.*

In the instant case the witness stated that he had taken an oath to tell the truth, knew its meaning, was bound to tell the truth, and understood that if he lied he would be guilty of perjury and could be jailed. This was sufficient. A test as to whether he had a religious belief to bind his conscience to tell the truth was not required. For these reasons we find that the trial court did not err in denying defendant's motion to strike the testimony.

■■ Defendant's final contention is that the court erred in giving the jury the definitional instruction on circumstantial evidence since all of the evidence presented was direct. The trial court gave State's Instruction No. 7, which is IPI-Criminal No. 3.02A, and provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

The defendant does not contend in this court that he suffered any prejudice, that the instruction was misleading and confusing, or that it led the jury to speculate that there were facts and circumstances proved which might, or did, authorize a conviction. In *People v. Gardner* (1954), 4 Ill.

2d 232, 122 N.E.2d 578, the court held that it was prejudicial error to give an instruction on circumstantial evidence where there was nothing but direct evidence in the case and where that evidence was both close and conflicting as to the issue of defendants' guilt. Nevertheless, as the court in *Gardner* observed at page 241, "Indeed, the giving of such an instruction *may under certain circumstances* constitute prejudicial error." (Emphasis supplied.) In the instant case the direct evidence was convincing, and we fail to see "how the verdict could have been different or that the jurors were, in fact, misled to the detriment" of the defendant. *People v. Fiereto* (1922), 303 Ill. 186, 190, 135 N.E. 417.

## VI.

In conclusion, we hold that none of the foregoing, either individually or cumulatively, is sufficient to constitute reversible error. Therefore, the judgment of conviction is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.