THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH
FLEMING, Defendant-Appellant.

First District (5th Division) No. 58755

Opinion filed November 14, 1975.—Rehearing denied January 19, 1976.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was found guilty by a jury of two counts of aggravated battery and one of unlawful use of weapons. He was sentenced to terms of two to five years for each aggravated battery offense and one to five years on the charge of unlawful use of weapons (knowing possession of a shotgun with a barrel of less than 18 inches in length). On appeal, he contends that (1) the court erred in not allowing defense counsel to personally examine jurors during the *voir dire* examination; (2) a weapon seized during a warrantless search incident to his arrest should have been suppressed; (3) the State failed to prove beyond a reasonable doubt that he did not act in self-defense; (4) the State improperly drew attention to the exercise of his fifth amendment privilege against self-incrimination; (5) he was convicted of two offenses of aggravated battery which arose from a single act; and (6) the mittimus does not reflect that the sentences were concurrent.

A pretrial suppression hearing was conducted to determine whether a shotgun and shells seized at the time of defendant's arrest were admissible. There was testimony from defendant and his brother, Veriest Fleming, that the police had approached the apartment where they lived with weapons drawn; that after being admitted by their sister, the police searched defendant and Veriest. At this time, defendant identified himself as the assailant, and Veriest then informed the police that the shotgun used by his brother in the shooting was under a mattress in Veriest's locked bedroom. There is a conflict in the testimony as to how the police obtained the key. Veriest said that the police took the key from his pocket during the search; however, a police officer testified that Veriest gave the key to the police after he told them the gun was in the bedroom under the mattress.

The trial court denied the motion to suppress for the reason that defendant lacked standing to object to the search, in view of the fact that the gun belonged to Veriest and was obtained from the latter's locked bedroom.

At trial, defendant did not deny that he shot the complaining witness, Calvin Thompson, twice with a shotgun, but he contended he did so in self-defense. He testified that he had confronted Thompson because of an incident two days prior to the shooting, involving defendant, his brother Veriest, and Thompson, in which the latter allegedly pistol-

whipped Veriest and at the same time threatened defendant. Wishing to further discuss this incident with Thompson, but fearing for his safety, defendant brought a shotgun and waited for Thompson. When Thompson arrived, defendant testified he refused to talk and instead reached with his left hand for a gun, which defendant says was tucked in his waistband but was visible through his open jacket. Defendant then fired a shot which knocked Thompson to the ground and, while he was down, defendant shot him a second time when, though wounded, defendant says Thompson continued to reach for his gun.

In support of defendant's claim of self-defense, the boyfriend of defendant's mother testified that he saw someone take a gun from Thompson after the shooting. He also said, however, that Thompson was carrying clothes on his left arm. Veriest testified that before the shooting he had seen Thompson carrying clothes but that his left arm was free.

The seriousness of the incident two days prior, which allegedly led to the meeting with and the shooting of Thompson, was disputed by the State. The investigating officer testified that Veriest had informed him that Thompson had merely slapped him with his hand at the time of the incident and that no mention of a gun was made. Thompson admitted having an argument with Veriest a couple of days before the shooting but denied pistol-whipping him or that he said anything to defendant during the incident. Thompson also denied that he was carrying a gun when he was shot and stated that he was carrying clothes on both arms but that his jacket was buttoned.

## OPINION

■■ Defendant first contends that the trial court's refusal to allow defense counsel to personally examine jurors during the *voir dire* denied him his right to a trial by a fair and impartial jury. He argues here, as he did below, that Supreme Court Rule 234 (Ill. Rev. Stat. 1971, ch. 110A, par. 234)[1] allows such a personal examination, and he cites *People v. Willis*, 26 Ill.App.3d 518, 325 N.E.2d 715, as authority for his interpretation of that Rule. Our reading of *Willis*, however, does not persuade us that the method used in the instant case requires a reversal. We initially note that the *Willis* court found other reversible error in defendant's

---

[1] "The judge shall initiate the *voir dire* examination of jurors by identifying the parties and their respective counsel and briefly outlining the nature of the case. The judge shall then put to the jurors any questions which he thinks necessary, touching their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination, but shall not directly or indirectly examine jurors concerning matters of law or instructions."

conviction, and it considered the requirements of Rule 234 only because the case was being remanded for a new trial. After describing an examination of jurors essentially similar to that conducted in the instant case, the *Willis* court citing *People v. Carruthers,* 18 Ill.App.3d 255, 309 N.E. 2d 659, said at page 527, "A reading of [Rule 234] makes it clear that it prohibits a total ban involving direct questioning of the prospective jurors by the parties [or] their attorneys." It then concluded its opinion by directing "the *voir dire* procedure utilized in this case not be repeated" on remand.

Given the reliance in *Willis* on *People v. Carruthers,* we find it useful to discuss the holding in that case. The *Carruthers* court, relying heavily on *People v. Lobb,* 17 Ill.2d 287, 161 N.E.2d 325, found that direct examination of jurors is not a necessity to guarantee a fair and impartial jury but a privilege preserved for the parties in the form of the supplemental questioning allowed by Rule 234. The *Carruthers* court concluded at pages 260-61:

"[I]t appears, under the authority of *Lobb,* that direct questioning of prospective jurors by the parties or their attorneys during voir dire examination is not to be totally prohibited. (See *Street v. Finney* (1973), 9 Ill.App.3d 638.)"

The *Carruthers* court, however, went on to say, in effect, that a prohibition on direct questioning would not constitute reversible error unless counsel was prevented from discovering possible bias or prejudice which would constitute a basis of challenge for cause, or that it interfered with an intelligent exercise of defendant's right of peremptory challenge.

We believe the facts in the instant case are analogous to the *Carruthers* situation and, from our review of the record, we are of the opinion that defendant has not established that he was prejudiced by the refusal to allow a personal interrogation of the jurors. (See *People v. Turner,* 27 Ill.App.3d 239, 326 N.E.2d 425.) Here, the trial judge permitted written questions and expressed his willingness to ask the jurors any questions submitted. Defendant does not contend that any suggested questions were not asked nor does the record indicate that he found it necessary to challenge any of the jurors. As a result, it cannot now be said that he was prejudiced to the extent that he was denied the right to a fair and impartial jury. In view thereof, we conclude that the refusal here to permit personal participation in the *voir dire* was not reversible error.

It should be noted, however, that we do not intend by this conclusion that attorney participation in the selection of jurors may be precluded in every situation. We think that the Rule, as indicated in *Carruthers* and *Lobb,* was intended to permit such participation, at least to a limited

extent. We should point out that attorney interrogation of jurors has long been the practice in this State, and the legislature has provided for a continuation of this practice in a recent amendment of section 115—4 of the Code of Criminal Procedure (Public Act 79—1033, approved by the Governor on September 18, 1975, and effective October 1, 1975), which expressly provides that "Each opposing counsel has the right to conduct his own *voir dire* examination of each prospective juror  *  *  *."

Defendant next assigns as error the denial of his motion to suppress the gun and shells seized during a warrantless search at the time of his arrest. Although both defendant and the State argued different theories on this point in the trial court, and although defendant in this court denies the seizure was justifiable either as a search incident to arrest or as a search to which consent had been given, the State now attempts to justify the seizure only on the alternative grounds that (1) defendant lacked standing to object to the search; or (2) assuming defendant had standing, there was consent to the search.

If consent to a search is given, all objections are waived. (*United States v. Matlock*, 415 U.S. 164, 39 L.Ed.2d 242, 94 S.Ct. 988; *People v. Mathews*, 406 Ill. 35, 92 N.E.2d 147.) However, consent must be given voluntarily and is invalid if obtained by coercion. (*People v. McGurn*, 341 Ill. 632, 173 N.E. 754.) Whether consent to a search has been given is a question of fact for the trial court, and where the evidence is conflicting, the reviewing court will uphold the trial court's determination unless it is clearly unreasonable. *People v. Ledferd*, 38 Ill.2d 607, 232 N.E.2d 684.

■■ Defendant asserted at the hearing that the key to the room where the gun was concealed was taken from his brother Veriest by the police while searching him. He argues that the threatening demeanor of the police officers who entered the apartment with guns drawn rendered any consent coercive. However, there is no record testimony that the guns remained drawn, and the arresting officers testified that Veriest voluntarily told them where the gun was hidden, and one of them testified that Veriest gave them the key to the room. The trial court heard the evidence and weighed the credibility of the witnesses. We cannot say that its determination that consent was given is clearly unreasonable. *Ledferd.*

The question of standing to challenge the search and seizure presupposes that there has been a violation of a constitutional right. Because we believe that the trial court properly found that there was a valid consent to the search, there can be no violation of a right upon which a question of standing could be predicated. Nevertheless, while the finding of consent to the search adequately disposes of the fourth amendment

issue, the question of standing must also be resolved against defendant. ██ An *Alderman v. United States,* 394 U.S. 165, 171-72, 22 L.Ed.2d 176, 185-86, 89 S.Ct. 961, the court stated:

> "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."

In *People v. Pohlmann,* 13 Ill.App.3d 779, 300 N.E.2d 302, the court, in discussing recent decisions on standing, including *Combs v. United States,* 408 U.S. 224, 33 L.Ed.2d 308, 92 S.Ct. 2284, held that a person has standing to complain of an illegal search if he had a reasonable expectation of privacy and freedom from government intrusion in the premises searched. In the instant case, it appears that defendant and Veriest had separate bedrooms; that the gun belonged to Veriest; that defendant had apparently never seen the gun before the morning of the shooting; that Veriest kept the bedroom locked and the key in his possession; and that the gun was found by the arresting officers in Veriest's locked bedroom. This evidence indicates that Veriest, rather than defendant, had an expectation of privacy in the bedroom and, in view of the foregoing, it cannot be said that the finding of lack of standing in defendant was erroneous.

██ Defendant next contends that the State failed to prove beyond a reasonable doubt that defendant did not act in self-defense. A person is privileged to use deadly force against another "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself * * *." (Ill. Rev. Stat. 1963, ch. 38, par. 7—1.) Once defendant presents some evidence of self-defense, the State must overcome it by proof beyond a reasonable doubt to sustain a conviction. (*People v. Wood,* 24 Ill.App.3d 15, 320 N.E.2d 32.) It is, of course, a well-settled rule that the question of whether one acted in self-defense is for the trier of fact (*People v. Dortch,* 20 Ill.App.3d 911, 314 N.E.2d 324), and that determination is not to be disturbed on appeal unless it is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Holtz,* 19 Ill.App.3d 781, 313 N.E.2d 234.) Also, to be left to the trier of fact is the credibility of witnesses. (*Bouillon v. Harry Gill Co.,* 15 Ill.App.3d 45, 301 N.E.2d 627.) The jury in the instant case heard Thompson's admissions as to his activities but still found him credible, and this court will not disturb that finding, particularly since the jury had the benefit (which this court does not) of viewing the jacket Thompson was wearing at the time he was shot and therefore could have determined whether the pellet holes in it were consistent with defendant's story that the jacket was open or with Thompson's testimony that it

was closed. It is indicated that the jury decided the jacket was in fact closed, thereby refusing to believe defendant's claim that Thompson was trying to draw a gun from the open jacket. In any event, from our review of the record, we cannot say that the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Holtz.*

Defendant next asserts two instances of conduct by the prosecutor which he alleges impermissibly called attention to the exercise of his fifth amendment privilege against self-incrimination. The officer testified in the State's case-in-chief that he advised defendant of his rights and that defendant said he understood them. The officer then testified he asked defendant whether he wished to make a statement concerning the shooting, and he gave the following information:

> "He told me that he went to his house and got a shotgun from his bedroom, he stated he loaded the shotgun and went into the hallway of the building where he lived to wait for Mr. Thompson. He said that when he saw Mr. Thompson coming through the hallway, he stepped in front of him and fired the shotgun at him. He said that Mr. Thompson then fell to the ground and he cocked the bolt on the shotgun and stepped over to Mr. Thompson and fired another shot into him. He said he then ran into his apartment."

Subsequently, during the officer's testimony, the following colloquy took place:

> "Prosecutor: Officer, at any time during your conversation with the defendant in the 18th District Station, did he mention to you that the complaining witness allegedly had a weapon?
>
> Defense Counsel: Objection.
>
> The Court: Sustained.
>
> \* \* \*
>
> Prosecutor: Officer, at any time did the defendant have occasion to talk to you about a self-defense on May 6th, 1972?
>
> Defense: I'm going to object to that.
>
> The Court: Sustained."

Defendant had not testified when those questions were asked and, because he had not mentioned self-defense in his conversation with the officer, he argues that the questions impermissibly drew attention to his right to remain silent as to this defense. We reject this contention and, in so doing, we note that the following observations are significant:

1. No question is raised as to the sufficiency of the *Miranda* warnings or that the information was not voluntarily given to the officer.

2. It does not appear from the record that defendant at any time re-

fused to answer any questions of the officer or otherwise expressly invoked the privilege of silence.

3. In his opening statement, defendant's counsel informed the jury that the victim had a gun and that defendant had acted in self-defense.

4. The record discloses that not only were objections to the questions sustained, but the jurors were instructed to disregard questions to which objections were sustained and were informed that it was their duty to determine the facts only from the evidence in the case. IPI—Criminal 1.01.

We see the questions not as a means to draw attention to defendant's silence, as he suggests here, but rather as an attempt to attack defendant's credibility by showing that while he gave somewhat detailed information about the shooting to the officer, he did not mention self-defense or that the victim had a gun. The objections to the questions were correctly sustained because no foundation for impeachment had been laid nor could it have been, as defendant had not testified at that time. See *People v. Powell,* 53 Ill.2d 465, 292 N.E.2d 409.

The second instance of allegedly improper conduct occurred during closing argument when the prosecutor, referring to the same conversation of defendant with the police officer, said the following:

> "Next witness that testified was an investigator who had occasion to go out and take a statement from the defendant and I think that statement is very crucial and very determinative of the issues in this case because I ask you and every one of you if the defense is true, what would the defendant had done when he was questioned by the officer, what is the very first thing you would have done being questioned? You would have told the detective, it was self-defense, that the other man had a gun. Now that wasn't done. No matter what counsel leads you to believe, what counsel leads you to believe simply is not the evidence. That detective took the witness stand, took oath to God and told you the truth and said the defendant never mentioned the victim had a gun or the victim was going for a gun, only that he waited for the victim and when the victim came, he got his gun and shot him."

As previously noted, there is no contention that defendant at any time expressly invoked his fifth amendment privilege. He maintains, however, that because he had not mentioned self-defense during his conversation with the officer, the remarks of the prosecutor improperly used that silence against him. He then urges that although no objections were made to the argument, the jury was nevertheless prejudiced to the extent that he was deprived of a fair trial.

■■ A failure to object to allegedly improper remarks in argument gen-

erally waives the error complained of (*People v. Britt*, 22 Ill.App.3d 695, 318 N.E.2d 138) unless the comments are so prejudicial as to deprive defendant of his fair trial. (*People v. Brown*, 20 Ill.App.3d 1064, 313 N.E.2d 488.) Defendant invites our attention to *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 and *Griffin v. California*, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229 as support for his argument. We do not believe, however, that the rationale of these cases is applicable.

In general, *Miranda* declares that it is impermissible to penalize an individual for exercising his fifth amendment privilege while he is under police custodial interrogation and that the prosecution may not therefore use at trial the fact that he stood mute or claimed his right to remain silent in the face of accusation. In *Griffin*, the California statute which established defendant's privilege against self-incrimination also allowed comment on defendant's failure to explain or deny evidence of facts against him and permitted an instruction to that effect. The *Griffin* court held that the Fifth Amendment forbids such comment or instruction.

The defendants in *Miranda* and *Griffin* did not take the stand; whereas, here no instruction similar to that in *Griffin* was given and defendant did take the stand. He did not negate the statements the officer testified he made nor did he testify that he invoked his right to remain silent at any time during his conversation with the police officer, or for that matter at any other time. In fact, he testified the victim had a gun and that he acted in self-defense.

■■ A prosecuting attorney has the right to draw legitimate inferences from facts and circumstances proved (*People v. Carbona*, 27 Ill.App.3d 988, 327 N.E.2d 546, and we believe it was reasonable for the prosecutor here to infer that if defendant had acted in self-defense he would have so informed the officer during their conversation, particularly when such information would have been of benefit to him. (See *People v. Weinstein*, 66 Ill.App.2d 78, 213 N.E.2d 115, *rev'd on other grounds*, 35 Ill.2d 467, 220 N.E.2d 432; 3 Wigmore on Evidence § 1042 (McNaughton rev. ed. 1961).) We note also that no objection was made to the incorrect statement of the prosecutor in his argument that the officer had testified "defendant never mentioned the victim had a gun or the victim was going for a gun  *  *  *."

■■ From our review of the entire record, we cannot say defendant was prejudiced to the extent that he did not receive a fair trial, and we are of the opinion that the questions and argument of the prosecutor did not impermissibly draw attention to defendant's Fifth Amendment privilege.

■■ As to defendant's remaining two contentions—that under the Illinois one-act, one-conviction rule, he can only be guilty of one count of aggravated battery and that the mittimus should be amended to show

that his sentences were to be served concurrently—the State agrees that the two counts of aggravated battery were not "independently motivated or otherwise separable." (*People v. Whittington,* 46 Ill.2d 405, 410, 265 N.E.2d 679.) Consequently, the conviction for one count aggravated battery (causing great bodily harm) is reversed, and the sentence therefor is vacated.

Finally, we note that defendant's sentences are in excess of those provided for by the Unified Code of· Corrections. Even though he was sentenced before the effective date of the Code, section 8—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4) provides that the sentencing provisions of the Code apply to prosecutions which have not achieved a final adjudication prior to the effective date of the Code, if they are less than provided for under the former law. For purposes of applying the Code, cases pending on appeal are considered as having not reached a final adjudication. *People v. Barnes,* 23 Ill.App.3d 390, 319 N.E.2d 248.

■■ Defendant was sentenced to a term of two to five years on the aggravated battery count. Aggravated battery is now a Class 3 felony (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(d)), for which the minimum sentence may not be more than one-third of the maximum. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(4).) Applying these provisions, defendant's minimum sentence will be reduced to one year eight months.

■■ Furthermore, his sentence of one to five years for unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(7)) must also be reduced. This offense is now a Class 4 felony (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b)), for which the maximum term may not exceed three years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(5)), while the minimum sentence remains at one year (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(5)). Thus, defendant's maximum sentence on this charge will be reduced to three years.

The judgments of conviction for aggravated battery (Ill. Rev. Stat. 1971, ch. 38, par. 12—4(b)(1)) and for unlawful use of weapons are affirmed as modified. The judgment of conviction for aggravated battery (Ill. Rev. Stat. 1971, ch. 38, par. 12—4(a)) is reversed.

Lastly, defendant points out that the common law record does not reflect that the sentences were to be concurrent. The transcript of proceedings shows that the trial court ordered the sentences to be served concurrently. Accordingly, it is ordered that the mittimus be amended to show the concurrent sentencing.

Affirmed as modified in part, reversed in part, mittimus amended as stated.

BARRETT, P. J., and DRUCKER, J., concur.