(No. 38686.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM JONES, Appellant.

*Opinion filed December 4, 1970.*

NORBERT N. ROSENTHAL, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In October of 1963 a jury in the circuit court of Cook County found the defendant, William Jones, guilty of arson, and he was sentenced to imprisonment for not less than three nor more than ten years. On this direct appeal he makes the following principal contentions: that his constitutional rights were violated by the admission into evidence of an oral confession given while in police custody; that he was prejudiced by the admission into evidence of hearsay testimony; that he was denied due process of law by the ad-

mission into evidence of a prior conviction not relevant to his credibility; that it was error for the trial judge to give an instruction on alibi; that the State failed to present sufficient evidence to corroborate his confession; and that the prosecutor's opening remarks to the jury were prejudicial.

On February 25, 1963, between 3:30 and 4:00 A.M., a fire occurred in a two-story frame dwelling at 5526 South Wells Street in the city of Chicago. The couple who owned the premises lived on the first floor, and Mrs. Faye Jones, the defendant's wife, lived on the second floor with their five children. All of the occupants of the house escaped unharmed, but the fire did $3000 worth of damage to the rear and roof of the building.

The defendant had rented the second floor apartment in August of 1962, and had lived there with his wife and children until January of 1963, when they separated. Between 11:00 P.M. and 12:00 midnight on February 24, 1963, the defendant went to the apartment to get some clothes, but his wife refused to admit him because, as she testified, "I was afraid of my husband." A next door neighbor testified that on February 10, 1963, two weeks before the fire, she overheard the defendant say to himself, while standing on the street in front of the building, that "they didn't let him up to see his children and he was going to burn the house down."

An investigator for the Chicago Fire Department testified that in his opinion the fire was deliberately set and a flammable liquid such as kerosene or fuel oil was used as an accelerant. He further testified that he found a five-gallon fuel oil can lying approximately ten feet from the point underneath the back porch where the fire originated. A chemist testified that an analysis of the can showed that it had contained "a flammable hydrocarbon similar to fuel oil." The can was not examined for fingerprints and was not otherwise connected with the defendant. Police officers testi-

fied that they smelled "an odor of a flammable liquid" about him which he explained by saying he had been working on a car.

At the hearing on the defendant's motion to suppress his alleged confession, he testified that about noon on the day of the fire he saw his sister-in-law's boy friend driving a car down Wentworth Avenue, called him to the curb and asked if he was "going down by my wife's house. He said 'No, they are not even there. I took them over to the sister's house. They had a fire down there last night or this morning. Somebody saying you did it. Got the police looking for you.' " The defendant testified that he telephoned the police department at once in order to "try to get it straightened out."

Two police officers, Louis Pote and Patrick O'Hara, met the defendant on the street corner that he had designated over the telephone and took him to the 7th district police station. At the police station two officers from the arson squad, William McInerney and Frank Kasky, as well as the two who had brought him to the station, began to interrogate him. The questioning lasted for no more than one hour. The defendant was 38 years old and had a ninth grade education.

The defendant testified that the officers repeatedly asked him what he was doing under the porch of the house and that he repeatedly denied any knowledge of the crime. He stated that officer Kasky told him, "You better talk," and "named some place that he would take me to." The defendant further testified that during the course of interrogation, officer McInerney, who asked most of the questions, kicked him in the legs below the knees "a lot of times"; that it caused "slight bruises" and bleeding in one place; and that it hurt a great deal. The defendant admitted that he did not complain about this treatment when he was examined by a doctor at the Cook County jail two days later. The defendant also identified McInerney as the officer who slapped him

in the face and pushed him back into a chair at one point during the questioning.

The defendant denied that he confessed. He stated: "He [McInerney] was asking the questions and answering them himself * * * When I answered his questions, he wouldn't accept it. So I just told him to have it the way he wanted it." He did not sign a written confession.

Officer McInerney denied that he or anyone in his presence struck, beat, or threatened the defendant in any way. The other officers present during the interrogation made similar denials. McInerney testified: " I asked him what he was doing underneath the porch at 5526 South Wells around 4:00 o'clock on the 25th of February, and he stated he was burning the house down." Moreover, both officers Pote and O'Hara testified that when they met the defendant on the street corner at his request, he first said that he was inquiring about the fire for a friend and then asked, "Did I burn my children?" The defendant denied that he made such a statement, and also denied that he broke into tears at that time, as the officers testified. He admitted, however, that he wept at the conclusion of the interrogation, as the officers also testified.

The testimony on the motion to suppress raised questions as to the credibility of the witnesses which were, in our opinion, correctly decided by the trial judge. The defendant told the officers that he had been at the home of a friend, Charles King, from 12:30 A.M. to 8:00 A.M. on February 25. Approximately 20 minutes after the questioning started, officers Pote and O'Hara left the interrogation room to verify this story. Officer McInerney testified that upon their return, Officer Pote stated in the presence of the defendant that King had said that the defendant was a liar; that he wasn't at King's home at the time he said he was. The defendant remained silent. Pote testified to the same effect. The defendant contends that the testimony as to King's statement as reported by Pote was inadmissible as

hearsay, but we do not agree. The defendant's silence could fairly be regarded as an implied admission that this story was false.

The defendant testified; and to impeach his credibility the prosecution offered evidence that he had been convicted of statutory rape in 1947, 16 years before the offense charged in this case. He contends that it was error to admit this evidence because the offense was too remote in time to have any bearing upon his credibility at the time of the trial, and also because the prior offense, statutory rape, was unrelated to his credibility. None of the arguments advanced in support of these contentions were made in the trial court. There, after initially objecting, the attorney for the defendant withdrew his objection, saying, "Oh well, let it go in. It doesn't make any difference."

The jury was instructed that "before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime and be supported by such facts and circumstances in evidence as are sufficient (when considered in connection with all the other evidence in the case) to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant." In the trial court the defendant objected to this instruction only upon the ground that he did not attempt to prove an alibi, and that ground of objection is again asserted in this court. We regard it as without merit, because his testimony on direct examination that he told the police officers that he had spent the night at the home of Charles King was sufficient to raise the defense of alibi. In this court the defendant also objects to the instruction upon other grounds, but these objections were not raised in the trial court and are not now available.

The two remaining contentions of the defendant can be shortly disposed of. He argues that there was insufficient evidence to corroborate his confession, but in addition to the evidence that has been set out, there was expert testimony

that the fire was of incendiary origin, and we are of the opinion that the verdict finding the defendant guilty was adequately supported. The further contention is that the conviction should be reversed because in its opening argument the prosecution stated that when the defendant first met with officers Pote and O'Hara "they had a conversation with the defendant at that time and during that conversation the defendant broke down and said, 'I burned up my children.'" The trial judge immediately instructed the jury to disregard the statement, which had not been disclosed by the prosecution prior to the hearing on the defendant's pretrial motion to suppress his confession. The statement should have been disclosed at that time but we do not find prejudicial error. At the trial the officers testified that what was said by the defendant at the time in question was "Did I burn up my children?"

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*