THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES McCLELLAN, Defendant-Appellant.

(No. 59713;

First District (1st Division)—June 2, 1975.

714

SIMON, J., dissenting.

Marshall R. Weinberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The familiar but lethal combination of a domestic quarrel and a loaded pistol was the cause of the tragic events disclosed by this record. Charles McClellan (defendant) was indicted for the murder of Starlon McClellan, his daughter (Ill. Rev. Stat. 1971, ch. 38, par. 9—1(a—2)); aggravated battery on his wife, Freddie McClellan (Ill. Rev. Stat. 1971, ch. 38, par. 12—4; also par. 12—4(b—1)) and for aggravated assault upon Della Leslie, his wife's sister (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a—1)). The count for aggravated assault was dismissed before trial. After a jury trial, defendant was found not guilty of murder but guilty of aggravated battery. He was sentenced to 2 to 10 years in the penitentiary. Defendant appeals.

In this case, defendant presents six points of alleged reversible error: the court advised the jury that defendant would assert the defense of accident and thus shifted the burden of proof to him; the comments by the trial court prior to trial which advised the jury that defendant would testify, which in essence forced him to do so; refusal of the trial judge to allow counsel for defendant to question prospective jurors directly; unfairly preventing defense counsel from using evidence favorable to the defendant; not holding an *in camera* hearing into the value, validity and admissibility of evidentiary tapes sought to be introduced by defendant; and the calling by the State of defendant's wife for a second time, only to identify the photo of her deceased daughter which was done solely to prejudice the jury. Defendant raises no point regarding the sufficiency of the evidence to prove him guilty of aggravated battery beyond a reasonable doubt. The State has taken the position that none of these issues present reversible error which would require reversal of the judgment.

Although the sufficiency of the evidence of guilt is not questioned, a

factual statement is essential. Freddie McClellan testified that she was the wife of defendant. Their daughter, Starlon, was born September 28, 1960. The parties lived in Cairo, Illinois. They separated on August 19, 1972, and the wife and daughter went to live with the former's sister, Della Leslie, in Chicago.

On September 16, 1972, the wife, the daughter and the former's sister were driving in an automobile in Chicago. The sister was driving and the wife sat in the front right-hand seat. The daughter, then some 12 years of age, sat in the right rear seat. They saw defendant driving an automobile in the opposite direction. The wife testified that then she noticed defendant following them. When they stopped at a traffic light, defendant came over to the left side of the automobile and told the sister to pull over as he wished to speak to his wife. At the wife's request, her sister disregarded this and proceeded. When they stopped at another light, defendant came out of his automobile, which he had parked to their right, and walked over to them. He asked to speak to the wife and she responded that there was nothing to talk about. The wife testified that defendant reached inside of his coat with his right hand, pulled out a pistol and fired a shot which struck her behind the right ear and a second shot which struck her in the right shoulder. She then slumped over and heard some more shots. She was then taken to the hospital where she remained until December 20, 1972, and then to a rehabilitation center where she was at the time of trial in February of 1973. She denied that she had ever touched defendant's hands or struggled with him for possession of the gun.

Della Leslie, the sister, corroborated this testimony and testified that after firing the two shots which wounded the wife, the husband stuck his hand inside the front window and shot his daughter once. The witness got out of the automobile and heard two more shots. She then re-entered the car and drove to obtain assistance.

The daughter entered the hospital on the day of the shooting. She subsequently died as a result of a bullet wound which had severed her spinal cord and caused other injuries.

Defendant called a clerical witness who testified without objection to his good reputation for being a nonviolent person and for truth and veracity. He also called his employment supervisor to give opinion evidence regarding his truth, veracity and honesty. He also called a minister, an aunt of defendant, who testified that she had a telephone conversation after the incident with Della Leslie who told her that there had been a scuffle over a gun and that Freddie McClellan and Starlon had been shot. This was partly corroborated by the minister's secretary

who had made the call and listened to the conversation. She testified that Della said that there had been a "tussle" over a gun between defendant, the wife and the daughter.

Defendant testified in his own behalf. He agreed that the parties had lived together near Cairo and that his wife had left and gone to Chicago with the daughter sometime in August of 1972. He testified that he bought the pistol on August 30, 1972, but that he never saw it again until September 16, 1972. On August 30, 1972, the gun was in a dresser drawer at home. He went to Chicago on September 15, 1972, in connection with his employment. He did not have the gun in his possession then. He encountered the automobile driven by Della Leslie on September 16, 1972, only by chance. He drove up to the side of their car and asked Della Leslie to stop as he wished to speak to his wife. She responded with a profanity and proceeded. At another light, he got out of his automobile, approached the other car where his wife was seated and said that he would like to talk to her. She responded, "You are fixing to get your F'g head blown off." Defendant asked if the daughter could ride along with him. He did not have the gun when he approached the car. His wife then raised up the gun in her hand and when he saw it, he grabbed it. The little girl jumped up and grabbed hold of the gun at which time it went off. He grabbed the gun back and "it fired off two more shots." His wife's hand then went limp and he had the gun in his hand. Della Leslie then drove off in the automobile and he was standing with the gun. In due course he went over to the police station, surrendered and gave them the gun.

The gun is a revolver which holds five cartridges. It was empty when the police received it. Defendant testified that he had removed the bullets or shells which remained. Ballistic evidence confirmed that this was the gun which had caused the death of the daughter. A police officer testified that, after being properly advised of his rights, defendant stated that he had the gun on his person in his waistband when he went up to the car. This was because he had trouble with his wife and he was afraid that she would shoot him. He pulled the gun out of his waistband and his daughter reached from the back seat so that the gun was accidentally discharged. Defendant stated that he could not recall how many shots had been fired. Defendant denied making this statement to the police.

■■ Defendant first points out that when the trial judge made a preliminary statement to the prospective jurors, he told them that defendant had filed an answer as part of pretrial discovery in which he asserted that his defense would be that he was not guilty but that the mishap was caused by the acts of Freddie McClellan and that the death

of the daughter was an accident caused by these acts. Defendant urges that this had the effect of shifting the burden of proof to him.

After examining all of the remarks made by the court on *voir dire*, we cannot agree as to the effect of this portion of the statement by the court. On a number of instances, the trial judge properly emphasized that the burden of proof rested on the State and that defendant had no need to testify. In addition, in the opening statement made by defendant's counsel to the jury, he described the occurrence as an accident in quite a similar manner. Furthermore, an examination of the given instructions shows that the court properly instructed the jury regarding the presumption of innocence and the burden of proof which rested on the State throughout the case. (IPI—Criminal 2.03.) We cannot agree that the jury was under any illusion or misapprehension as regards the burden of proof.

We will also point out here, as we will concerning additional contentions, that defendant made no objection to this portion of the preliminary statement by the court; did not ever move the court to discharge the jury for this reason and did not include any reference to this alleged error in his written motion for a new trial. It is therefore clear that, even if any error did exist in this regard, it has been waived by failure to object and failure to include the matter in the motion for new trial. See *People v. Studdard*, 51 Ill.2d 190, 198, 281 N.E.2d 678, regarding failure to object; *People v. Hairston*, 46 Ill.2d 348, 366, 367, 263 N.E.2d 840, on failure to include the matter in the written motion for new trial; also, *People v. Davis*, 18 Ill.App.3d 793, 797, 310 N.E.2d 682, and *People v. Smith*, 17 Ill.App.3d 494, 496, 497, 308 N.E.2d 257, covering both of these points.

■■ The second point raised by defendant is actually an extension of his first claim regarding the initial statements of the trial court. He urges that as a result his "counsel had no choice but to place him on the stand." The one and only authority cited by defendant in support of this contention is *People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432. That case is completely inapplicable. There, the supreme court reversed a conviction for murder because of repeated argument by the prosecutor to the jury that it was the duty of defendant to "create a reasonable doubt of her guilt before she can be acquitted." (35 Ill.2d 467, 469.) This continued although the court sustained defense objections upon some 17 occasions.

Virtually the sole argument in defendant's brief in support of this proposition is that the only witnesses to the incident were the wife, her sister and the defendant. That very statement convinces us that the situation involved in the case made it essential for defendant to testify

in his own behalf. Reading of this record demonstrates that the entire defense was well prepared and planned and that testimony by defendant in his own behalf displayed the use of good strategy by his counsel. The verdicts of the jury demonstrate the validity of this proposition.

The third issue raised by defendant is that he was prejudiced by the trial court's refusal to allow counsel to question prospective jurors. The record shows only that the trial judge initiated the *voir dire* by reading the indictment and making a general statement to the entire array. There is no further direct record of the balance of the proceedings on selection of the jury. The record does show statements by the court and counsel on defendant's motion to discharge the jury immediately before they were sworn and on oral argument on defendant's written motion for new trial. From this we learn indirectly that the trial judge permitted counsel for both sides to ask questions of all of the jurors collectively. The court also suggested that the attorneys submit additional questions in writing to be put to individual jurors by the court. No such questions were submitted by defendant's counsel. The record also shows indirectly that two jurors were reluctant to serve and, although their answers showed that they were qualified, the court excused them for cause on motion of defendant. The record does not reflect the questions put to any of the jurors, collectively or individually, their answers or whether defendant made additional challenges for cause or excused any juror by peremptory challenge.

Selection of the jury is governed by Supreme Court Rule 234 (50 Ill. 2d R. 234) which provides: "The judge shall initiate the *voir dire* examination of jurors * * *. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination * * *." The constitutionality of a similar restriction upon examination of individual jurors by the attorneys has been established. (*People v. Lobb*, 17 Ill.2d 287, 161 N.E.2d 325.) However, it has been repeatedly held that "direct questioning of prospective jurors by the parties or their attorneys during *voir dire* examination is not to be totally prohibited." *People v. Turner*, 27 Ill.App.3d 239, 326 N.E.2d 425, citing *Lobb*; also *People v. Carruthers*, 18 Ill.App.3d 255, 309 N.E.2d 659; *Street v. Finney*, 9 Ill.App.3d 638, 292 N.E.2d 553. See also *People v. Willis*, 26 Ill. App.3d 518, 325 N.E.2d 715.

However, it does not follow that each and every violation of the rule in selection of the jury requires reversal of an ensuing conviction. It has been held by this court that there is no prejudicial error without evidence that defendant's attorney was "prevented from discovering any fact or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror in the case." *People v.*

*Turner*, 27 Ill.App.3d 239, 326 N.E.2d 425, quoting from *People v. Carruthers*, 18 Ill.App.3d 255, 261, 309 N.E.2d 659.

■■ In the case before us, there is no showing of prejudice of any kind or to any degree. Defendant's brief does not demonstrate that he was prejudiced in any manner or that his trial was unfair. The record before us shows only that counsel for defendant failed to submit supplemental questions to the trial court. The record shows no request to the court to permit direct questions in any situation or regarding any specific field of inquiry. From this, we can only conclude that the questioning by the court was sufficient to show the need for a challenge for cause or to permit "an intelligent exercise of the peremptory right." (See *Lobb*, 17 Ill.2d 287, 302.) The added fact that the trial judge excused two jurors for cause, despite the fact that their answers showed them qualified to serve, tends strongly to show that the process of selection by the court was fair and impartial in this particular case. This conclusion is cogently supported by the verdict of not guilty of murder which demonstrates fair and impartial consideration by the jury.

■■ Defendant's brief makes no sufficient showing of prejudice in any specific manner. As this court has recently held, *People v. Turner*, 27 Ill.App.3d 239, 243:

"\* \* \* [I]t is incumbent upon the objecting party to show that the prohibition against direct questioning imposed by the court prevented him from discovering any fact or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror, or otherwise precluded him from an intelligent exercise of the right to challenge for cause or peremptorily."

■ In the case before us, we conclude that defendant did receive a fair and impartial trial. However, we wish to make the point clear that, pending amendment of Rule 234, which we understand is presently being considered by the supreme court, it is the duty of all trial judges to initiate the *voir dire* examination and to allow the parties or their attorneys a reasonable opportunity to supplement such examination in accordance with the clear dictates and requirements of the rule. Until the rule is modified or amended, it should be respected and observed and no trial judge should totally prohibit direct questioning of prospective jurors by the parties or their attorneys.

Defendant's next claim, that the trial court prevented him from using favorable evidence, arises from defense counsel's statement that he had possession of certain tapes which allegedly contained telephone conversations betwen defendant and his wife. This contention requires reference to the record. Counsel for defendant cross-examined the wife regarding certain alleged telephone conversations between her and

defendant shortly after the wife left their home. Defense counsel then asked the witness if she had ever threatened defendant and received a negative answer. He then stated: "Q. If I told you we had a tape of those —." An objection was made by the State and sustained and a conference was had between the court and counsel. Defense counsel stated that he had "the tapes." The State's Attorney asked why they were not referred to in the discovery documents. Defense counsel responded that he had just received them and he offered the State's Attorney a chance to listen to them. The court stated that these tapes involved a violation of law; and, after some additional conversation, the court stated that there should be no reference to the tapes in the presence of the jury at this point. The court then stated: "Something might come in later, but nothing now," and defense counsel replied, "All right."

At a later time, also out of the presence of the jury, defense counsel asked that the tapes be marked for identification as defendant's exhibits. The court told counsel for the defense that it was the court's duty to warn counsel that it might be a violation of law if he were to turn the tapes over to anyone. After additional discussion, there was a conference off the record. Counsel for defendant then stated, "All right. On behalf of my client, in lieu of what Your Honor said, he is withdrawing the tapes and not using them." The court responded to defense counsel, "Not using them?" and counsel replied, "Right." The court then stated, "All right" and trial proceeded.

In defendant's brief he states that the tapes were of conversations had by the wife "after the shooting took place." This statement is not supported by the trial record. In our opinion, this record shows no error. Counsel for defendant specifically announced that he would not use the tapes. The tapes were never offered in evidence. No offer of proof was ever made. The point, if one ever existed, was thus withdrawn; quite analogous to the withdrawal of an objection by a defendant. *People v. Jones,* 47 Ill.2d 135, 140, 265 N.E.2d 125.

In addition, no description of the alleged contents of the tapes appears in this record. All that counsel for defendant ever did was to have the tapes marked for identification and then tender them to the State's Attorney for his examination. He then immediately withdrew the use of the tapes. We find no error of any kind in this record. In this instance also, failure of defendant to include this point in the motion for new trial evidences a waiver in accordance with the authorities above cited. Cases such as *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 and *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643, have no application here.

■■ In our opinion, the examination of the record above set forth ef-

fectively disposes of defendant's fifth argument to the effect that the court should have had an *in camera* hearing into the admissibility of the tapes. No such hearing by the court was requested or even suggested by defendant. Also, the statement in this portion of defendant's brief that the trial court erred by preventing adequate cross-examination of the wife is not supported by the record.

The sixth and last contention of defendant is that prejudicial error occurred when the wife was called to the stand for a second time to identify a photograph of the deceased. She broke down and wept in the presence of the jury. After the initial testimony of the wife and of her sister, and after ballistics and other testimony, the State's Attorney recalled the wife for the sole purpose of having her identify a designated photograph as that of her deceased daughter. The record shows that the witness stated, "Yes, that is Starlon, that it my baby. I don't have my baby any more." The jury was immediately excused and the record shows the witness repeating, "Oh, Starlon, my baby." Counsel for defendant requested that the record indicate that the witness "broke down on the stand in front of the jury." No motion of any kind was made by defendant but the matter was included in the motion for new trial.

■■ The record shows that the photograph of the deceased, identified by the wife, was a necessary piece of probative evidence. The pathologist who testified to the cause of death identified the body which he had examined only by use of this photograph. There was a legitimate need for the wife to identify the picture as a foundation for the essential testimony of the pathologist. When there is a proper use or need for identification of a photograph, collateral objections, such as the gruesome character of the picture, are not availing. (*People v. Speck*, 41 Ill.2d 177, 202, 242 N.E.2d 208.) In addition, there is nothing in this record which proves or even suggests that the State's Attorney recalled this witness and had her identify the photograph for any reason beyond the necessity of creating a proper foundation for the testimony of the pathologist. At this point, also, it is pertinent again to repeat the statement that the acquittal of the defendant on the charge of murder shows that the jury gave the case a completely fair and unbiased consideration.

We have made a careful and detailed examination of this record. We find no reversible error. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J., concurs.

Mr. JUSTICE SIMON, dissenting:

The court relies entirely on procedural grounds in affirming the aspect

of this case dealing with the taped conversations. It determined that the defendant's attorney voluntarily withdrew the tapes, thereby obviating the need for a ruling by the trial court on their use, that the defendant failed to make an offer of proof so that the record in this court could show whether the tapes would have been helpful to the defendant, and that the defendant failed to specify in his written motion for a new trial error in excluding the tapes thereby waiving that issue. I do not agree with this view of the record and, therefore, would reach the constitutional issues implicit in denying the defendant, on the basis of a state statute, the use of the tapes to impeach his wife when she testified against him.

When the tapes were first referred to by defendant's counsel in cross-examining the wife, the State objected and the objection was sustained. The State's own interpretation of the record as reflected by the following statements appearing in its brief indicates that the tapes were excluded by the trial court:

> "The State objected to the attempted introduction of the tapes and the trial court sustained that objection.
>
> The trial court refused to allow the tapes to be used, stating that the tapes were violative of Illinois law."

The day after the trial court sustained the State's objection to reference to the tapes, defendant's counsel asked that the tapes be marked as defendant's exhibits. Thereupon, even though the State made no objection, the trial court informed counsel it was the court's duty to warn counsel about the Illinois eavesdropping statute.[1] that counsel might be violating the law by turning the tapes over to the trial court or the prosecutor, and that the court would "hate to see you [defendant's counsel] arrested as a result of you turning this over to the court."

It was the responsibility of the trial judge to permit the use of any proper evidence which might have assisted the court and the jury in arriving at the truth and in assuring that the defendant would have a fair trial. Instead, the trial court with good intentions, but in a misdirected effort to protect counsel from violating the eavesdropping statute, chilled defendant's offer of the tapes which were being presented for the purpose of impeaching a crucial prosecution witness. The trial court erred in emphasizing the eavesdropping statute rather than the defendant's constitutional right to confront the witness against him and

---

[1] Ill. Rev. Stat. 1973, ch. 38, § 14—2(b), provides:
"A person commits eavesdropping when he:
(b) Uses or divulges, except in a criminal proceeding, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device."

in discouraging the use of the tapes by suggesting to defendant's counsel that he was exposing himself to criminal liability. The record shows that only after receiving the trial court's warning about the pitfalls of the eavesdropping statute did defendant's counsel inform the court he was withdrawing the tapes and not using them. In view of the trial court's warning, this was not a voluntary withdrawal. Certainly, it was not the equivalent of the withdrawal of an objection to evidence of a previous conviction which this court relies on in citing *People v. Jones* (1970), 47 Ill.2d 135, 140, 265 N.E.2d 125. In that case defendant's attorney after initially objecting, withdrew his objection, saying, "Oh, well, let it go in. It doesn't make any difference."

Although the motion for a new trial did not specifically mention the tapes, it did refer to error committed by the trial court in sustaining objections by the State to questions propounded by defense counsel and in denying due process to the defendant. If the issue of improper exclusion of the tapes was not raised by the motion for a new trial, this is a proper case for the application of Supreme Court Rule 615(a) relating to the consideration of plain errors or defects affecting substantial rights not brought to the attention of the trial court, particularly since, as pointed out below, the exclusion of the tapes may have deprived the defendant of sixth amendment rights. *People v. Pickett* (1973), 54 Ill.2d 280, 282-283, 296 N.E.2d 856.

The conclusion reached by this court that the case should not be remanded because no offer of proof was made and no description of the alleged contents of the tapes appears in this record overlooks the circumstances under which the tapes were excluded. The failure of the defendant to make a formal offer of proof is clearly excusable in the face of the trial court's admonition about the eavesdropping statute, since even an offer of proof would have constituted a violation of the statute as the trial court viewed it and explained it to defense counsel.

This court's decision is not supported by procedural shortcomings, and the court should, therefore, have considered whether denying defendant use of the tapes deprived him of constitutional rights.

If there was any evidence on the tapes helpful to the determination of the guilt or innocence of the defendant, their use is constitutionally mandated and cannot be blocked by the eavesdropping statute. The State relies on *People v. Kurth* (1966), 34 Ill.2d 387, 216 N.E.2d 154, which held that illegal tapes cannot be used by the State against a defendant in a criminal prosecution. In this case, the defendant was seeking to use the tapes in question in his defense.

The exclusion of the tapes because of a State statute preventing their use by one accused of crime as an aid to his defense deprives the accused

of his constitutional rights of due process and to confront witnesses against him. By its interference with the effort of the defendant to contradict the testimony of his wife, the court denied the defendant his sixth amendment rights, even though the court was relying on Illinois statutes making the tapes which defendant was seeking to use or their recording or use illegal. In *Davis v. Alaska* (1974), 415 U.S. 308, a crucial prosecution witness was shielded by a protective order prohibiting any reference in cross-examination to his juvenile record. The protective order was granted on the basis of a State statute rendering juvenile records inadmissible in nonjuvenile courts. The Supreme Court held that the interest of the State in protecting the anonymity of juvenile offenders is subservient to the sixth amendment right to full and effective cross-examination of a witness, and that the State courts erred in concluding that the cross-examination as limited by the protective order was adequate. Similarly, the right of a defendant to confront a witness against him with adequate cross-examination overrides the interest of the State in providing protection against eavesdropping.

When, as in *United States v. Nixon* (1974), 418 U.S. 683, 707-712, the legitimate needs of the fair administration of criminal justice are held to outweigh even a presidential privilege, a State statute designed to prohibit eavesdropping cannot be used by a trial court to shield conversations which may on cross-examination impeach a prosecution witness or establish the defendant's innocence.

Fairness and justice require that one accused of criminal conduct be afforded the opportunity without interference by the court to use any evidence which is proper and may tend to show his innocence. The tapes were proper. Whether they were helpful, this court cannot determine because of their swift disappearance from the trial arena. I would, therefore, remand the case for *in camera* hearing to determine their relevance for purposes of impeachment. This is the procedure the trial court should have adopted when the tapes were presented even though defendant's counsel did not formally move for such a hearing. The suggestion that such a hearing be conducted was implicit, however, in counsel's statement that he was tendering the tapes to the State's Attorney so that he could listen to them. The next step in orderly trial procedure would have been an *in camera* hearing upon the State interposing any objection to their use.

If at the *in camera* hearing it developed that the tapes were relevant, the defendant would then be entitled to a new trial.