COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Bray and Annunziata
Argued at Norfolk, Virginia


KERRI CARDINALL CHARITY, S/K/A
 KERRI CARDANELL CHARITY
                                         OPINION BY
v.          Record No. 2099-94-1    JUDGE ROSEMARIE ANNUNZIATA
                                          MARCH 4, 1997
COMMONWEALTH OF VIRGINIA


UPON A REHEARING

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

David P. Baugh for appellant.

Kathleen B. Martin, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Appellant, Kerri Cardanell Charity, was indicted for burglary and credit card theft.  The trial court denied his motion to suppress identification evidence from a lineup in which he participated.  Following a jury trial, appellant was convicted of burglary and sentenced to five years imprisonment; appellant was found not guilty of credit card theft.  Appellant contends the trial court erred in admitting identification evidence and by conducting voir dire itself, refusing to allow appellant's counsel to ask questions as provided by Code § 8.01-358.  Finding no reversible error, a panel of this Court affirmed appellant's conviction.  The panel granted appellant's motion for rehearing to reconsider whether the trial judge's error in its conduct of voir dire was harmless.  We find no reversible error and affirm.

I.  The Identifications

An out-of-court identification is admissible if either (1) the identification was not unduly suggestive; or (2) the procedure was unduly suggestive, but the identification was so reliable that there is no substantial likelihood of misidentification.  E.g., Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986).  Moreover, even if the out-of-court identification is inadmissible, an in-court identification may still be made if "the origin of that identification is independent of the inadmissible out-of-court identification procedure."  Id.

A valid lineup does not require "that all the suspects or participants be alike in appearance and have the same description, as long as there is nothing to single out the accused from the rest."  Williamson v. Commonwealth, 211 Va. 57, 59, 175 S.E.2d 285, 287 (1970).  The evidence supports the trial court's finding that the videotaped lineup, in which appellant participated, was not unduly suggestive.  Based on descriptions given by the victims in the several cases under investigation, the six men participating in the lineup were selected for their height, facial features, complexion, age, hands, voice, and the absence of facial hair.  They wore identical clothing in the lineup.  Height was the only feature which significantly differed from one man to the next.  However, the men selected for the lineup were of differing heights because of the varying

descriptions given by the several victims, including the victim in this case, Ashleigh Clukey. The fact that shorter men were intermixed with two who were closer to appellant's height is of little import here because Ms. Clukey encountered the intruder as he was walking up the stairs of her home, and his height appeared to change with his ascent.

The evidence also shows that the conduct of the police was not unduly suggestive. The police did not pressure Ms. Clukey to identify appellant. They told her she needed to see the video lineup, but they did not tell her it would include the perpetrator. They told her to take her time and not to worry if she could not identify the intruder. The police showed her appellant's picture only after she identified him from the video lineup.

Moreover, even if the lineup had been unduly suggestive, the trial court properly found that Ms. Clukey's identification of appellant was not so unreliable as to create a substantial likelihood of misidentification. The factors to consider in determining reliability are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. E.g., Hill, 2 Va. App. at 692, 347 S.E.2d at 918 (citing Neil v. Biggers, 409 U.S. 188, 199-200

(1972)).

Applying these factors to determine the reliability of Ms. Clukey's identification, we cannot conclude the trial court abused its discretion in admitting the evidence.  See Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) ("The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.").  Ms. Clukey observed the intruder for seventeen seconds and came within ten feet of him as he walked up the stairs toward her.  She could see his face clearly and ascertain his facial features because the outside porch light was on at the bottom of the steps and the bathroom light was on at the top of the stairway.

Ms. Clukey's identification of the intruder at trial was the same as the identification she gave to the police at the time of the crime, except she first reported the intruder wore a hat. This discrepancy is of insufficient import to require suppression of the identification.  Ms. Clukey's ability to distinguish one suspect from another was clearly established.  She correctly found that appellant was not among those in the photo lineup presented to her shortly after the incident.  At both the trial and the lineup, Ms. Clukey positively identified appellant as the intruder.  She identified him both wearing and not wearing a baseball cap.  Approximately seven months elapsed between the crime and the lineup and another five elapsed before trial.

Under the facts of this case, neither period represents an interval of such length that Ms. Clukey's identification testimony can be deemed unreliable as a matter of law.

Appellant also argues that Ms. Clukey's in-court identification should not have been admitted because it was tainted by the conduct of the police, who showed her a photo of appellant, bald-headed, after she identified him in the lineup video and after she indicated she could not recall whether he was wearing a cap. This Court has applied the same two-part test set forth above to determine whether to suppress an in-court identification. E.g., Doan v. Commonwealth, 15 Va. App. 87, 95-96, 422 S.E.2d 398, 402-03 (1992). Thus, the showing of the photo must have been so unduly suggestive as to render Ms. Clukey's in-court identification so unreliable as to raise a substantial likelihood that she misidentified appellant.

To support his position, appellant argues that Ms. Clukey's in-court identification was unreliable because: (1) she did not describe the intruder as bald until seeing the photo showing appellant without hair; (2) she testified at trial that the intruder had little hair, at least none sticking out from his hood; and (3) because, after seeing the photo of appellant without a hat, she was unable to recall the hat she said the intruder wore. We disagree with appellant's contentions.

The trial court did not abuse its discretion by admitting Ms. Clukey's in-court identification. Ms. Clukey's inability to

recall whether the intruder wore a cap is the only significant inconsistency which exists between her early identification and her in-court testimony. Ms. Clukey identified appellant both at the lineup, when he was wearing a cap, and in the photo, when he was bald-headed. Moreover, her report to the police that the intruder wore a hood and a cap is not significantly inconsistent with her testimony at trial that the intruder had little hair, at least none visible to her.

## II.   The Voir Dire

The parties do not dispute that the trial court's failure to allow appellant's counsel to ask voir dire questions of the prospective jurors was a clear deviation from the mandate of Code § 8.01-358.[1]  That such a deviation is an abuse of discretion is

_____

[1]Code § 8.01-358 provides:

> The court and counsel for either party
> shall have the right to examine under oath
> any person who is called as a juror therein
> and shall have the right to ask such person
> or juror directly any relevant question to
> ascertain whether he is related to either
> party, or has any interest in the cause, or
> has expressed or formed any opinion, or is
> sensible of any bias or prejudice therein;
> and the party objecting to any juror may
> introduce any competent evidence in support

beyond cavil.  It remains only to determine whether that error was harmless.

Upon rehearing, appellant contends that the Commonwealth bears the burden of proving harmless error and that, in our initial opinion, we applied the wrong standard in determining whether the error was harmless.  We disagree.  We did not deviate from the well established principles governing appellate review of trial court errors.  Nonetheless, in the interest of clarity, upon rehearing, we can further explain our ruling.

Counsel conducted <u>voir</u> <u>dire</u> is a statutory, not a constitutional, right.  <u>See</u> <u>Tuggle v. Commonwealth</u>, 228 Va. 493, 504, 323 S.E.2d 539, 546 (1984), <u>vacated on other grounds</u>, 471 U.S. 1096 (1985); <u>Turner v. Commonwealth</u>, 221 Va. 513, 521, 273 S.E.2d 36, 41 (1980), <u>rev'd on other grounds</u>, 476 U.S. 28 (1986).[2]  Thus, we are required to address the trial court's error in this case by applying the legal standard for determining

(..continued)

> of the objection; and if it shall appear to
>
> the court that the juror does not stand
>
> indifferent in the cause, another shall be
>
> drawn or called and placed in his stead for
>
> the trial of that case. . . .

[2]Moreover, appellant did not raise a constitutional claim below and is, therefore, barred from raising such a claim on appeal.  Rule 5A:18; <u>Jacques v Commonwealth</u>, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991); <u>Swann v. Commonwealth</u>, 247 Va. 222, 229, 441 S.E.2d 195, 201, <u>cert. denied</u>, 115 S. Ct. 234 (1994).

when non-constitutional error is harmless.

> Non-constitutional error is harmless [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.

Code § 8.01-678; see Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc); Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926).  To determine whether an error is harmless, this Court "must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues."  Lavinder, 12 Va. App. at 1007, 407 S.E.2d at 912.  "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same."  Id. at 1005, 407 S.E.2d at 911.  Allocating the risk of non-persuasion, e.g., the burden of proof, is not necessary to our analysis in this case.  Such a consideration becomes relevant only where the appellate court finds the matter "so evenly balanced that [it] feels . . . in virtual equipoise as to the harmlessness of the error."  O'Neal v. McAninch, __ U.S. __, __, 115 S. Ct. 992, 994 (1995).  We find no such circumstances here.

We conclude that the verdict in this case would have been the same notwithstanding the trial court's error, because we find the record plainly shows that appellant received a fair trial and that substantial justice was reached.  See Lavinder, 12 Va. App.

at 1005, 407 S.E.2d at 911.  The record affirmatively establishes that appellant was tried by an impartial jury.  It is undisputed that each person on the panel of twenty from which the ultimate jury was selected was free from exception.

Although the court refused to allow appellant's counsel to ask the prospective jurors questions directly, it gave appellant's counsel the opportunity to submit voir dire questions for the court to ask.  Counsel stated that he had not formulated specific questions but asserted that his questions would address whether a prospective juror had any "disagreement [with] or bias against" the law governing the burden of proof, the presumption of innocence or the possession of stolen property, and whether a prospective juror would credit the testimony of police officers over that of other witnesses or was predisposed to believe eyewitness testimony.  The court offered appellant's counsel a recess to write specific questions to submit to the court.  In conducting voir dire, the court questioned prospective jurors on each of the matters appellant's counsel raised.  Counsel did not proffer any questions that were not asked, and he did not submit any follow-up questions to those the court did ask.

Clearly, the court failed to follow the mandate of Code § 8.01-358.[3]  However, it plainly appears from the record that

_____

[3]Appellant characterizes the trial court's error in this case as, inter alia, "intentional," "blatant," "arbitrary," and even "bizarre."  Admittedly, the error in this case is troubling, not simply because it denied appellant's statutory right to counsel-conducted voir dire, but also because it may have been committed in deliberate disregard of a known statutory directive.

this error did not affect the questions propounded to the prospective jurors, the selection or composition of the jury panel or its partiality. Thus, we conclude that the record plainly shows that the erroneous, non-constitutional ruling did not deprive appellant of a fair trial or substantial justice and, therefore, that it plainly did not affect the verdict.

Accordingly, appellant's conviction is affirmed.

Affirmed.

(..continued)
 See Canons 2(A), 3(A)(1), Canons of Judicial Conduct for the State of Virginia. Our review, however, is limited to addressing the effect of the error on the case at bar, not the trial judge's reasoning, state of mind or knowledge when making the error.

Bray, J., concurring.

While I concur in the result expressed in the majority opinion, I take exception to the inclusion of n.3. Notwithstanding the hyperbole of appellant's able counsel, I find nothing in the record which either requires or justifies reference in the opinion to the Canons of Judicial Conduct.

Similarly, I am constrained to also except to the dissenter's conclusion that the "Virginia Beach practice" of conducting voir dire "appears from the record." The procedure on voir dire which pertained in the subject trial is the only issue on appeal, not the judicial customs of the city. Moreover, in the colloquy between appellant's counsel and the court, the court repeatedly referenced itself in the first person, clearly not implicating the entire Second Judicial Circuit of Virginia.

Elder, J., dissenting.

I respectfully dissent from Part II of the majority opinion and would hold that the trial court committed reversible error in refusing to allow counsel-conducted voir dire.

In 1981, the General Assembly amended Code § 8.01-358 to specifically grant attorneys the right to voir dire the venire. The Legislature's action was in response to the Supreme Court of Virginia's decision in Turner v. Commonwealth, 221 Va. 513, 521, 273 S.E.2d 36, 41 (1980), cert. denied, 451 U.S. 1011 (1981), where the Court held that a defendant "has no constitutional right to counsel-conducted voir dire." While the amendment did not create a constitutional right, as the majority recognizes, it did create a statutory right which the trial court admittedly denied.

It appears from the record that the Virginia Beach practice involves "the court doing voir dire" of potential jurors.[4] The statutory right to counsel-conducted voir dire was called to the trial court's attention on several occasions. The trial judge responded that he would not allow counsel to ask the questions and stated, "That's what I've always done, and that's what I'm going to do." The majority acknowledges "[t]hat such a deviation is an abuse of discretion is beyond cavil." To affirm this case under these circumstances is to send a signal that the judges of

_____

[4]See exchange between the trial judge and trial counsel from the trial transcript as reflected in Appendix I attached hereto.

– 13 –

an entire judicial circuit may ignore the mandate of a statute with impunity and without concern for reversal upon appellate review.

As the Supreme Court stated in Turner, "[i]n the absence of a statute or court rule to the contrary, as long as the selection procedure results in a fair and impartial jury, the manner in which a jury is to be selected is properly within the trial court's sound discretion."  Id. at 522, 273 S.E.2d at 41 (emphasis added).  The amendment to Code § 8.01-358 removed the trial court's discretion to conduct jury selection without affording counsel the right to participate in voir dire.  In this case, the trial court knowingly and purposefully refused to follow the Legislature's mandate and therefore committed reversible error.  See People v. McClellan, 331 N.E.2d 292, 298 (Ill. App. Ct. 1975) (stating that where a statute or rule provides for counsel-conducted voir dire, "no trial judge should totally prohibit direct questioning of prospective jurors by the parties or their attorneys"), cert. denied, 425 U.S. 950 (1976); 47 Am. Jur. 2d Jury § 200, at 881 (1995) ("Where, under a local court rule, it is the duty of all trial judges to . . . allow the parties or their attorneys a reasonable opportunity to supplement [voir dire] examination, no trial judge should totally prohibit direct questioning of prospective jurors by the parties or their attorneys.").

I agree that under normal circumstances, non-constitutional

error is harmless if it plainly appears from the record that the error did not affect the verdict. <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (<u>en</u> <u>banc</u>). This case, however, defies harmless error analysis. The record in a case such as this could never demonstrate juror bias or prejudice affecting the trial's outcome. Appellant's counsel was given the opportunity to submit questions to the trial court, and all questions proffered by counsel were asked. Additionally, appellant's counsel failed to propose follow-up questions to be asked by the trial court. However, none of these facts proves a lack of harm or prejudice to appellant. At the heart of an attorney's right to <u>voir</u> <u>dire</u> the venire is the attorney's well-founded desire to engage in one-on-one interaction with a potential juror, and thereby to personally analyze all of the attendant variables inherent in such an interaction.[5] These

---

[5]For example, the National Jury Project, in its treatise <u>Jurywork: Systematic Techniques</u>, stated:

> A judge's role as authority figure in the courtroom exacerbates the [courtroom's intimidating atmosphere], because many prospective jurors are afraid to say anything that might displease the judge.
> The task of the lawyer conducting the voir dire is to create an atmosphere that encourages honest and straightforward answers that reveal the prospective juror's personality, experiences, and attitudes. This can be done by establishing a relationship with prospective jurors that conveys an attitude of respect and recognition of them as individuals. . . .
> The attorney's tone of voice and demeanor is an important determinant of the kind of relationship she or he will have with

unquantifiable and indeterminate variables will rarely, if ever, be revealed in the record, and I see no way that counsel can make such variables known to the trial court in the form of an objection or proffer.

"[T]he Legislature implicitly recognized the advantage to counsel conducted <u>voir</u> <u>dire</u>." <u>Lankford v. Foster</u>, 546 F. Supp. 241, 247 (W.D. Va. 1982), <u>aff'd</u>, 716 F.2d 896 (4th. Cir. 1983), <u>cert. denied</u>, 467 U.S. 1214 (1984). "The influence of the <u>voir</u> <u>dire</u> process may persist through the whole course of the trial proceedings." <u>Ford v. Norris</u>, 67 F.3d 162, 171 (8th Cir. 1995). In this case, because the trial court knowingly and purposefully ignored the mandate of Code § 8.01-358, it abused its discretion and committed reversible error. I would therefore reverse the conviction and remand for further proceedings if the Commonwealth be so advised.

(..continued)
          prospective jurors.

National Jury Project, <u>Jurywork:  Systematic Techniques</u> Vol. 2, at 17-13, 17-14 (Elissa Krauss & Beth Bonora eds. 1995).

THE COURT: All right. Are we ready to proceed in the Charity matter?

MR. BAUGH: Your Honor, there's one matter. It's been about three years since I tried a case in the Beach, and I was reminded this morning by Mrs. Pritchard the local practice involves the court doing voir dire. Of course, the statute permits the defendant through his counsel to conduct his own voir dire. We would expect our right to conduct our own voir dire in the presence of the jury.

THE COURT: Well, what I normally do and what I will do in this case is allow counsel any relevant or pertinent questions it may --

MR. BAUGH: I can tell the court so we don't do it in the presence of the jury, the majority of my -- all my voir dire questions will revolve around whether or not jurors have any disagreement or bias against -- concerning burden of proof, presumption of innocence, testimony of police officers over nonpolice officers, automatically be predisposed to believe the testimony of an eyewitness, whether or not they disagree with the law of possession.

MRS. PRITCHARD: Your Honor, number one, I'd like to go through the -- I have my questions. I've provided copies to Mr. Baugh.

THE COURT: I'll need copies of some -- they don't have to be typed necessarily, Mr. Baugh. You can write them out in longhand. I'll need to go through the questions and see.

MR. BAUGH: Your Honor, I have not prepared the exact questions. I have the topics. I do not know what the exact questions will be until I ask them under the statute.

MRS. PRITCHARD: Your Honor --

THE COURT: I'm going to ask the questions. That's what I've always done, and that's what I'm going to do; but I will ask whatever questions you desire to have asked.

MR. BAUGH: Then, Your Honor -- then please note our exception. The statute -- I would ask the court for any authority which permits -- which denies the defendant his right to do voir dire.

THE COURT: I will note your objection and exception to the

court's ruling for the record and will note that, of course, the court will ask any question that you desire to have asked that is relevant to jury selection.

MRS. PRITCHARD:  Your Honor --

MR. BAUGH:  Excuse me.  Are you telling me that you are not going to follow the statute?

THE COURT:  I'm telling you that I'm going to ask the questions.

MR. BAUGH:  No, you're not.  The statute says specifically the defendant may ask his questions; and I'm asking the court are you telling me categorically you are not going to follow the statute?

THE COURT:  I am telling you that I will ask any question that you wish to have asked if the questions are written out and presented to the court.

MR. BAUGH:  Then, Your Honor, we're going to need a recess while we prepare for this extraordinary departure from Virginia law.

THE COURT:  All right, sir.  I'll take a recess and give you time to jot down your questions.

MR. BAUGH:  Thank you.  Your Honor, if I could ask you, are there any other laws that Virginia Beach follows that the Commonwealth of Virginia has never heard of?