ELDER, Judge,
dissenting.
I respectfully dissent from Part II of the majority opinion and would hold that the trial court committed reversible error in refusing to allow counsel-conducted voir dire.
*268 In 1981, the General Assembly amended Code § 8.01-358 to specifically grant attorneys the right to voir dire the venire. The Legislature’s action was in response to the Supreme Court of Virginia’s decision in Turner v. Commonwealth, 221 Va. 513, 521, 273 S.E.2d 36, 41 (1980), cert. denied, 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981), where the Court held that a defendant “has no constitutional right to counsel-conducted voir dire.” While the amendment did not create a constitutional right, as the majority recognizes, it did create a statutory right which the trial court admittedly denied.
It appears from the record that the Virginia Beach practice involves “the court doing voir dire” of potential jurors.[4] The statutory right to counsel-conducted voir dire was called to the trial court’s attention on several occasions. The trial judge responded that he would not allow counsel to ask the questions and stated, “That’s what I’ve always done, and that’s what I’m going to do.” The majority acknowledges “[t]hat such a deviation is an abuse of discretion is beyond cavil.” To affirm this case under these circumstances is to send a signal that the judges of an entire judicial circuit may ignore the mandate of a statute with impunity and without concern for reversal upon appellate review.
As the Supreme Court stated in Turner, “[ijn the absence of a statute or court rule to the contrary, as long as the selection procedure results in a fair and impartial jury, the manner in which a jury is to be selected is properly within the trial court’s sound discretion.” Id. at 522, 273 S.E.2d at 41 (emphasis added). The amendment to Code § 8.01-358 removed the trial court’s discretion to conduct jury selection without affording counsel the right to participate in voir dire. In this case, the trial court knowingly and purposefully refused to follow the Legislature’s mandate and therefore committed reversible error. See People v. McClellan, 29 Ill.App.3d 712, 331 N.E.2d 292, 298 (1975) (stating that where a statute or rule provides for counsel-conducted voir dire, “no trial judge *269 should totally prohibit direct questioning of prospective jurors by the parties or their attorneys”), cert. denied, 425 U.S. 950, 96 S.Ct. 1723, 48 L.Ed.2d 193 (1976); 47 Am.Jur.2d Jury § 200, at 881 (1995) (“Where, under a local court rule, it is the duty of all trial judges to ... allow the parties or their attorneys a reasonable opportunity to supplement [voir dire ] examination, no trial judge should totally prohibit direct questioning of prospective jurors by the parties or their attorneys.”).
I agree that under normal circumstances, non-constitutional error is harmless if it plainly appears from the record that the error did not affect the verdict. Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc). This case, however, defies harmless error analysis. The record in a case such as this could never demonstrate juror bias or prejudice affecting the trial’s outcome. Appellant’s counsel was given the opportunity to submit questions to the trial court, and all questions proffered by counsel were asked. Additionally, appellant’s counsel failed to propose follow-up questions to be asked by the trial court. However, none of these facts proves a lack of harm or prejudice to appellant. At the heart of an attorney’s right to voir dire the venire is the attorney’s well-founded desire to engage in one-on-one interaction with a potential juror, and thereby to personally analyze all of the attendant variables inherent in such an interaction.[5] These unquantifiable and indeterminate varia *270 bles will rarely, if ever, be revealed in the record, and I see no way that counsel can make such variables known to the trial court in the form of an objection or proffer.
“[T]he Legislature implicitly recognized the advantage to counsel conducted voir dire.” Lankford v. Foster, 546 F.Supp. 241, 247 (W.D.Va.1982), aff'd, 716 F.2d 896 (4th Cir.1983), cert. denied, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). “The influence of the voir dire process may persist through the whole course of the trial proceedings.” Ford v. Norris, 67 F.3d 162, 171 (8th Cir.1995). In this case, because the trial court knowingly and purposefully ignored the mandate of Code § 8.01-358, it abused its discretion and committed reversible error. I would therefore reverse the conviction and remand for further proceedings if the Commonwealth be so advised.
APPENDIX I
THE COURT: All right. Are we ready to proceed in the Charity matter?
MR. BAUGH: Your Honor, there’s one matter. It’s been about three years since I tried a case in the Beach, and I was reminded this morning by Mrs. Pritchard the local practice involves the court doing voir dire. Of course, the statute permits the defendant through his counsel to conduct his own voir dire. We would expect our right to conduct our own voir dire in the presence of the jury.
THE COURT: Well, what I normally do and what I will do in this case is allow counsel any relevant or pertinent questions it may—
MR. BAUGH: I can tell the court so we don’t do it in the presence of the jury, the majority of my — all my voir dire questions will revolve around whether or not jurors have any disagreement or bias against — concerning burden of proof, presumption of innocence, testimony of police officers over *271 nonpolice officers, automatically be predisposed to believe the testimony of an eyewitness, whether or not they disagree with the law of possession.
MRS. PRITCHARD: Your Honor, number one, I’d like to go through the — I have my questions. I’ve provided copies to Mr. Baugh.
THE COURT: I’ll need copies of some — they don’t have to be typed necessarily, Mr. Baugh. You can -write them out in longhand. I’ll need to go through the questions and see.
MR. BAUGH: Your Honor, I have not prepared the exact questions. I have the topics. I do not know what the exact questions will be until I ask them under the statute.
MRS. PRITCHARD: Your Honor—
THE COURT: I’m going to ask the questions. That’s what I’ve always done, and that’s what I’m going to do; but I will ask whatever questions you desire to have asked.
MR. BAUGH: Then, Your Honor — then please note our exception. The statute — I would ask the court for any authority which permits — which denies the defendant his right to do voir dire.
THE COURT: I will note your objection and exception to the court’s ruling for the record and will note that, of course, the court will ask any question that you desire to have asked that is relevant to jury selection.
MRS. PRITCHARD: Your Honor—
MR. BAUGH: Excuse me. Are you telling me that you are not going to follow the statute?
THE COURT: I’m telling you that I’m going to ask the questions.
MR. BAUGH: No, you’re not. The statute says specifically the defendant may ask his questions; and I’m asking the court are you telling me categorically you are not going to follow the statute?
*272 THE COURT: I am telling you that I will ask any question that you wish to have asked if the questions are written out and presented to the court.
MR. BAUGH: Then, Your Honor, we’re going to need a recess while we prepare for this extraordinary departure from Virginia law.
THE COURT: All right, sir. I’ll take a recess and give you time to jot down your questions.
MR. BAUGH: Thank you. Your Honor, if I could ask you, are there any other laws that Virginia Beach follows that the Commonwealth of Virginia has never heard of?

. See exchange between the trial judge and trial counsel from the trial transcript as reflected in Appendix I attached hereto. *270 National Jury Project, Jurywork: Systematic Techniques Vol. 2, at 17-13, 17-14 (Elissa Krauss & Beth Bonora eds. 1995).

. For example, the National Jury Project, in its treatise Jurywork: Systematic Techniques, stated:
A judge’s role as authority figure in the courtroom exacerbates the [courtroom’s intimidating atmosphere], because many prospective jurors are afraid to say anything that might displease the judge.
The task of the lawyer conducting the voir dire is to create an atmosphere that encourages honest and straightforward answers that reveal the prospective juror’s personality, experiences, and attitudes. This can be done by establishing a relationship with prospective jurors that conveys an attitude of respect and recognition of them as individuals....
The attorney's tone of voice and demeanor is an important determinant of the kind of relationship she or he will have with prospective jurors.